SHELDON and others *v.* KEOKUK NORTHERN LINE PACKET CO. and others.

*(Circuit Court, W. D. Wisconsin. ——, 1880.)*

REMOVAL OF CAUSE—SEVERAL CONTROVERSIES IN SAME SUIT—ACT OF MARCH 3, 1875.—Under the second section of the act of March 3, 1875, (*c.* 137,) a suit may be removed from the state court into the circuit court of the United States for the proper district, when there are several controversies in the same suit that are properly severable in their character, on the application of any one or more plaintiffs or defendants actually interested in any one of such controversies, and who may reside in a state other than the one in which the other party to the controversy resides, although, in such suit, the court may thereby take along with it jurisdiction of a controversy between citizens of the same state.

BUNN, J. This action is commenced in the state court by the plaintiffs, who are residents of Wisconsin, against the Keokuk Northern Line Packet Company, a resident of Missouri, the Northwestern Union Packet Company, a resident of Iowa, and Peyton S. Davidson, a resident of Wisconsin. The defendant, the Keokuk Northern Line Packet Company, applies to have the case removed to this court under the second section of the act of congress, of March 3, 1875, (chapter 137, Laws 1875,) which is as follows:

"That any suit of a civil nature, at law or in equity, now pending, or hereafter brought, in any state court, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, * * * in which there shall be a controversy

between citizens of different states, * * * either party may remove said suit into the circuit court of the United States for the proper district. And when, in any suit mentioned in this section, there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the plaintiffs or defendants actually interested in such controversy may remove said suit into the circuit court of the United States for the proper district."

The suit is a creditor's bill brought to reach property in the hands of the Keokuk Northern Line Packet Company, and certain other property held by Peyton S. Davidson, to be applied in satisfaction of judgments separately obtained by the plaintiffs against the Northwestern Union Packet Company in 1873 and 1874. The complaint charges that in March, 1873, there was a fraudulent transfer made by the defendant, the Northwestern Union Packet Company, of all its steamboats, barges and other personal effects to the defendant, the Keokuk Northern Line Packet Company, which ought in equity to be now applied in satisfaction of the plaintiff's judgments. And, also, that about April 1, 1873, there was a fraudulent conveyance by the Northwestern Union Packet Company of certain lots and real estate, situate at La Crosse, to the defendant Peyton S. Davidson, which they are also entitled to have applied toward the payment of their said claims. The Northwestern Union Packet Company has not been doing business for many years, was not served with process, and makes no appearance. The Keokuk Northern Line Packet Company contends that there is a controversy between citizens of different states, and, also, that there is a controversy in the case that is wholly between it and the plaintiffs, who are citizens of the different states, and which can be fully determined as between them, within the meaning of section 2 of the act of 1875, so as to entitle it to a removal to this court.

The plaintiffs contend that the suit is one controversy, and that no removal can be allowed, because all of the defendants

are not non-residents of the state of Wisconsin, where the plaintiffs reside.

Upon a careful examination of the bill of complaint and of the removal statutes, I think the case comes within both the clauses of section 2 of the act of 1875. I have not come to this conclusion without hesitation, because the supreme court have not yet placed a construction upon the act, and because, according to the construction uniformly given to the original removal clause in the judiciary act of September 24, 1789, and subsequent acts amendatory thereof, there would be no right of removal in this case, for the reason that one of the defendants, Peyton S. Davidson, is a resident of the same state with the plaintiffs. Under that act the right of removal did not exist unless all of the defendants were residents of a state other than the one in which the plaintiffs resided, and it is contended that the same construction is applicable to the law of 1875. But it cannot fail to be observed that the law of 1875 adopts the language of the constitution as though it were the intention of congress to widen out the jurisdiction of the circuit court in removal cases, and make it commensurate with that conferred by that instrument.

The law of 1789 provided that if a suit be commenced in any state court * * * by a citizen of the state in which the suit was brought, against the citizen of another state, the defendant might file a petition for removal, etc.

It is manifest that the jurisdiction thus conferred falls far short of the constitutional provision, which extends the jurisdiction of the federal courts to all controversies between citizens of different states, where the amount or value in dispute exceeds the sum of $500, thus leaving a large reserve of power in the federal courts, which could not be exercised without further legislation by congress. The law of July 27, 1866, provided for a removal on application of a defendant who was a citizen of a state other than the one in which the plaintiff resided, where the suit was one in which there could be a final determination of the controversy, so far as it concerned him, without the presence of the other defendants;

and allowed the case to proceed as to the resident defendants in the state court. This was the first material departure from the act of 1789. This act was amended by the act of March 2, 1867, so as to allow a removal on the application of either plaintiff or defendant, on making and filing in the state court an affidavit that he had reason to believe, and did believe, that from prejudice or local influence he would not be able to obtain justice in the state court.·

This still further widened the jurisdiction by allowing a removal on the application of the plaintiff as well as defendant. The law of 1875 is broader and more comprehensive than all the others, and it would seem that congress, by employing the language they did, intended to avoid the construction so uniformly placed upon the previous acts, and to allow a removal wherever there should be, in the language of the constitution, a controversy between citizens of different states, although some of the plaintiffs or defendants, not being merely nominal parties, should have a common state citizenship with some or all of the opposing party, plaintiff or defendant. Indeed, it seems difficult to give meaning and effect to the act of 1875, without enlarging the jurisdiction of the circuit court, from what it stood under the construction given to previous laws, to conform more nearly to the constitution itself, whose language congress, for the first time adopts.

In *Lockhart* v. *Horn*, 1 Woods, C. C. R. 628, Mr. Justice Bradley, in a case arising under the previous law, says:

"Were this an original question I should say that the fact of a common state citizenship existing between the complainants and a part only of the defendants, provided the other defendants were citizens of the proper state, would not oust the court of jurisdiction. It certainly would not under the constitution. The case would still be a controversy between citizens of different states. But the strict construction put by the courts upon the judiciary act is decisive against the jurisdiction, and I am bound by it."

But is such construction applicable to the act of 1875? Certainly not, if Mr. Justice Bradley is correct in saying that

a common state citizenship existing between the complainants and a part only of the defendants, provided the other defendants were citizens of the proper state, would not, under the constitution, oust the court of jurisdiction.

Here is an actual, substantial controversy existing between the plaintiffs, residents of Wisconsin, and the Keokuk Northern Line Packet Company, a citizen of Missouri, upon the determination of which depends title to a large amount of property, consisting of steamboats, barges, etc., turned over by the judgment debtor to the said defendant. Perhaps it might be said to be the main controversy in the case; but I do not choose to rest the decision on that ground. If Peyton S. Davidson were a merely nominal party, the suit could be removed under the law as it has existed from the foundation of the government. But he is not. He is a proper party, with an actual interest in the controversy, so far as it relates to the alleged fraudulent transfer of the real estate to him in April, 1873. But, though a proper party, he is, in my judgment, not a necessary party, so far as relates to the alleged fraudulent transfer of the steamboats and other personal property to the Keokuk Northern Line Packet Company.

That transfer was made at a different time, to a different party, and upon a distinct and different consideration, and has no necessary connection with the transfer of the lots of land to Davidson, except that the transfer was made by the same judgment debtor. The suit as to Davidson might be discontinued and his name struck from the record, and the controversy which the plaintiffs would still have with the Keokuk Northern Line Packet Company could be fully determined, and all the rights of the parties interested be settled, without Davidson's presence.

Under the law governing creditors' bills, any person may be made a defendant who is a party to any distinct, fraudulent conveyance, or has an interest in any property so fraudulently conveyed by the debtor, if he be privy to the fraud. But he is not a necessary party to other controversies in the same suit relating to other and distinct fraudulent transfers to other persons. So any person may be joined as plaintiff

who has a judgment claim against the debtor, though entirely separate and distinct from the claims of the other plaintiffs. Such a suit is well calculated to present distinct controversies, in which some of the plaintiffs or defendants may have no real interest.

The statute says that "when, in any suit,   *   *   there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them," etc. It does not say an actual controversy, which would exclude merely nominal parties, nor the principal controversy, which would devolve upon the court the duty of determining between them which should be considered the main and which the subordinate controversy; but the language is "a controversy," which means any actual controversy in which both parties have an interest. And that there may be two or more such controversies arising in the same suit is manifest, and is clearly contemplated by the act.

Now, whichever may be considered the principal controversy, here are two controversies arising in the same suit, to one of which Peyton S. Davidson is a necessary party, and in which the Keokuk Northern Line Packet Company has no particular interest, and another to which the Keokuk Northern Line Packet Company is a necessary party, but which can be fully determined as between it and the plaintiffs without the presence of Davidson. This would seem to bring the case within the meaning of the second clause of the section. And I am the more confirmed in this construction by the views of Judge Drummond in *Farmers' Loan & Trust Company* v. *Pekin & Southwestern Ry. Co.* 12 Chig. Legal News, No. 8, p. 65, (Nov. 8, 1879.)

But it seems just as clear that, if Peyton S. Davidson had joined in the application for removal, the case would come under the first clause of the section. Indeed, it seems a self-evident proposition that the first clause, adopting, as it does, the language of the constitution, which is the only source of power in such cases, confers all the jurisdiction which it was competent for congress to confer on the federal courts, except, perhaps, that the right of removal, under that clause, attaches

to the party, plaintiff or defendant; so that, where some are residents and some non-residents, all might have to join in the application, which is not the case under the second clause.

It might be claimed that the second clause amounts to a legislative construction of the first; that it does not include a case where some of the defendants or plaintiffs are non-residents, but one or more reside in the state with the opposite party. But it is not to be presumed that congress used the language of the constitution in a different sense from that in which the framers of that instrument used it, or that congress in the second clause intended to provide for cases not covered by the constitutional provision.

The effect of the second clause is to allow a removal in the class of cases therein described, on the application of one or more plaintiffs or defendants, without the concurrence of the others. There is, perhaps, another effect to be given to the second clause. It manifestly provides for the same class of cases as is provided for in the law of 1866. But instead of allowing a severance of the cause, it takes the whole case to this court; and the decisions thus far are to the effect that in this respect it supersedes the law of 1866.

Taking the section together, it would appear that it was the intention of congress, in all cases where there is a controversy between citizens of different states which is joint and indivisible in its nature, to allow a removal on the application of the party plaintiff or defendant. And when there are several controversies in the same suit that are properly severable in their character, to allow a removal on the application of any one or more plaintiffs or defendants actually interested in any one of such controversies, and who may reside in a state other than the one in which the other party to such controversy resides.

Take a case of a suit brought in this state by a resident thereof against two makers of a joint promissory note, one of whom resides in Wisconsin and the other in Missouri. The action is joint. The interest of the defendants is not severable. If the view I have taken of the law be correct the case may be removed at the instance of the party defendant, both

defendants joining in the application. Possibly it might be removed upon the application of the non-resident defendant alone. It is not necessary to decide that question. But suppose one defendant to be the maker, residing in Missouri, and the other the indorser, residing in Wisconsin, both of whom, under the law of this state, may be sued in the same action. Here the obligation and interest of the parties are several, and the controversy between the plaintiff and maker might be entirely distinct from the one between the plaintiff and indorser, and fully capable of determination as between them without the presence of the other defendant. And the case falls properly under the second clause, and would be removable on the application of the defendant who is a resident of Missouri, without joining his co-defendant. Under the law of 1866 the case would proceed in the state court against the indorser; but under the act of 1875, which does not countenance the severance of causes, the entire case would come to this court.

The removal clause in the judiciary act of 1789 allowed a removal on the application of the defendant where he resided in the state other than the one in which the plaintiff resided, and in which the suit was brought. And the supreme court held the "defendant" here meant the party defendant; and that, where there was more than one, they must all be residents of another state. Similar constructions have been placed upon the laws of 1866 and 1867. But the constitution extends the jurisdiction of the circuit courts to controversies between citizens of different states; and the first clause of the second section of the act of 1875 provides for a removal in all cases by either party, whenever there is a controversy between citizens of different states.

Here is a controversy between citizens of different states. Here is a controversy, and a vital one, between two citizens of Wisconsin and a citizen of Missouri. And the reasons for conferring jurisdiction upon the federal courts, apply just as strongly to such a case as to one where all the defendants are citizens of another state. The fact that, in order to take jurisdiction in such cases, the court must also take along with

it jurisdiction of a controversy between citizens of the same state, is no objection to the exercise of the jurisdiction.

If, in order to take the jurisdiction intended to be granted by the constitution, it becomes necessary to take jurisdiction of some controversies in the same suit between citizens of the same state, why, the court is quite as competent to deal with these as any other; and there are several other highly important classes of cases where jurisdiction of controversies between citizens of the same state is expressly conferred by the constitution on the federal courts.

The question is simply one of what a fair construction of the constitution is, keeping in mind the purpose had in view by the framers. The language is not at all ambiguous, and seems fairly to include all controversies between citizens of different states, not excepting those where some of the parties to the controversy, plaintiff or defendant, have a common state citizenship with some or all of the opposite party.

This seems to be the view taken by Mr. Justice Strong, in the case of *Taylor* v. *Rockfeller*, 7 Cent. Law Jour. 349; and, also, of Judge Dillon, in his work on the Removal of Causes, where, on page 30, he says:

"But all the legislation previous to the act of 1875 was such that the supreme court was not necessarily obliged to decide this question; and it is, in our judgment, properly to be considered as still open. It will be extremely embarrassing and unfortunate if the supreme court shall feel constrained to assign such narrow limits to the constitution. Looking at the purpose in the grant of the federal judicial power in the constitution, and the benefits which are felt to flow from the exercise of this jurisdiction, and the embarrassments which would result from a close and rigid construction of the constitution in this regard, we think the supreme court would be justified in holding that a case does not cease to be one between citizens of different states, because one or some of the defendants are citizens of the same state with the plaintiffs, or some of the plaintiffs, provided the other defendants are citizens of another or other states."

Mr. Justice Strong, in *Taylor* v. *Rockfeller*, says:

"Whether, since the act of 1875, the right of removal extends to all cases in which some of the necessary or indispensable defendants are citizens of the same state with the plaintiffs, or some of them, is no doubt a very important question, not yet decided. It does not, if the rule of construction applied to the judiciary act of 1789, and the acts of 1866 and 1867, is applicable to the latter act. But the latter act, for the first time, adopts the language of the constitution, and seems to have been intended to confer on the circuit courts all the jurisdiction which, under the constitution, it was in the power of congress to bestow.

"Certainly the case mentioned would be a controversy between citizens of different states, and the reasons which induced the framers of the constitution to give jurisdiction to the federal courts of controversies between citizens of different states apply as strongly to it as they do to a case in which all the defendants are citizens of a state other than that in which the plaintiffs are citizens; and if that instrument is to be construed so as to carry out its intent, it would seem the question should be answered in the affirmative."

It is a subject of regret that these questions, of so much daily interest to the profession, should not, before this, have been put at rest by the only authority finally competent to deal with them. But, until the supreme court shall have placed a construction upon the statute, the opinion of two judges of such eminence and ability is entitled to very great weight.

The case will be docketed in this court.

NOTE.—See *Ruckman* v. *Palisade Land Co. ante,* 367; *Burke* v. *Flood, ante,* 541; *Ruckman* v. *Ruckman, ante,* 587.