Harlan, J.
This case involves the construction of the second clause of the second section of the act of March 3, 1875, c. 137, determining the jurisdiction of the circuit courts of the United States, and regulating the removal of causes from the state courts.
It was commenced by a complaint filed in one of the courts of the state of Minnesota. The plaintiffs are William H. Latham and Edward P. Latham, citizens, respectively, of Minnesota and Indiana. The defendants are Ashbel H. Barney, Jessie Hoyt, Alfred M. Hoyt, Samuel N. Hoyt, William G. Fargo, N. C. Barney, Charles T. Barney, citizens of New York; Angus Smith, a citizen of Wisconsin; Benjamin P. Cheney, a citizen of Massachusetts; and the Winona and St. Peter Land Company, a corporation organized under the laws of Minnesota.
The complaint is very lengthy in its statement of the grounds upon which the suit proceeds, but the facts, so far as it is necessary to state them, are these:
The territory and state of Minnesota received, under various acts of Congress, lands to aid in the construction of railroads within its limits: Act of March 3, 1857, 11 Stat., 195; act of March 3, 1865, 13 Stat., 526; act of July 13, 1866, 14 Stat., 97. The benefit of the grants from the Government was transferred by the state to the Winona and St. Peter Railroad Company, a corporation created under its own laws, with authority to construct a road from Winona westerly by way of St. Peter in that state.
Prior to October 31, 1867, the individual defendants already named (except N. C. Barney and Charles T. Barney), together with Charles F. Latham and Danforth N. Barney (both of whom died before the commencement of this suit), had, under a con- *469 trract between them and that company, constructed 105 miles of the proposed road, whereby the latter became entitled to several hundred thousand acres of the lands granted by Congress to the state. On the day last named those persons entered into a written contract with the company, whereby the latter, among other things, agree, in consideration of its indebtedness to the former, to sell and convey to them such lands as it should receive from the state by reason of the construction of the 105 miles of road, excepting so much thereof as was necessary for tracks, right of way, depot grounds, and other purposes incidental to the operation of the railroad. Of the moneys advanced and used in construction, Charles F. Latham contributed one thirty-seventh, and to that extent, it is claimed, he was entitled, in equity, to an undivided one thirty-seventh of the lands earned. The company, prior to October, 1870, received from the state conveyances of lands to the extent of 364,154 acres, which quantity was increased to 617,510 acres by a deed from the state, of date February 26, 1872; and on May 30, 1874, it received a further conveyance for more than 500,000 acres. Up to the end of the year 1869, the railroad company made numerous sales, on long time, and in small quantities for actual settlement. Charles F. Latham died in October, 1870, seized and possessed, it is contended, of the equitable title to the undivided one thirty-seventh of the lands earned. He left nine heirs at law, among whom are the plaintiffs. The defendant Ashbel H. Barney, acting for his associates, had a settlement with those heirs in reference to the sales of lands, and procured releases from them, which are averred to have been fraudulent and void as to present plaintiffs. The facts averred in support of that charge need not be here detailed. They are fully set forth in the complaint. The surviving associates of Charles F. Latham, together with N. C. Barney and Charles F. Barney, heirs at law of D. N. Barney, deceased, without the knowledge and consent of plaintiffs, incorporated themselves, under the general laws of the state of Minnesota, as the Winona and St. Peter Land Company, to which, by their direction, the railroad company conveyed, and by which were thereafter managed, all the lands remaining unsold. The plaintiffs claimed that the individual defendants owed them, as heirs of Charles F. Latham, the further sum of $3,500, on account of sales of land made both prior to his death and subsequently *470 thereto, up to the time when the title to the lands was conveyed to the land company. The individual defendants repudiate the claim of plaintiffs to any further sum on that account, and the land company refused to recognize the claim of plaintiffs to an interest in the unsold lands.
The specific relief asked for is:
First—That the individual defendants be required to account to plaintiffs for the amount of all moneys which came to their hands from the sales of land prior to the death of Charles F. Latham, and pay over to plaintiffs the sum of $3,500, or such other sum as shall be found, on an accounting, to be due them as their share thereof; also, such amounts as might be due them out of the sums received by Ashbel H. Barney, from purchasers subsequently to the death of Charles F. Latham.
Second—That the plaintiffs be adjudged to be the owners of two-ninths of one thirty-seventh part of all unpaid contracts and securities in the hands of the land commissioner of the company; that the land company be required to account with plaintiffs for all lands sold by it subsequently to the conveyance from the railroad company, and convey to them an undivided two-ninths of one thirty-seventh of all the unsold lands.
The individual defendants answered and put in issue all the material allegations of the complaint.
The land company, in its answer, admits the conveyance by the railroad company to have been without any consideration by it paid; that the stock therein is all held by its co-defendants and the heirs or personal representatives of D. N. Barney; and that if the relief prayed for against the other defendants be granted, the company is liable to, and should account to plaintiffs, as asked in their complaint. It consented that the matters and facts established and proven as against its co-defendants, may be considered as established and proven against it, and such judgment accordingly entered as might be equitable and proper.
Upon the petition, accompanied by a proper bond, filed by the individual defendants, the state court entered an order that it would proceed no further in the suit. But, upon motion of plaintiffs, the circuit court remanded the suit to the state court, upon the-ground that it was not removable under the act of Congress.
Is this suit removable upon the petition of the individual defendants, citizens of New York, Wisconsin and Massachnsetts? *471 Does the fact that the land company, one of the defendants, is a corporation of Minnesota, of which state one of the plaintiffs is a citizen, prevent a removal of the suit to the circuit court of the United States?
The answer to these questions depends upon the construction which may be given to the second clause of the second section of the act of March 3, 1875.
We will be aided in our construction of that act by recalling as well the language as the settled interpretation of previous enactments upon the subject of removal of causes from state courts.
The act of September 24, 1789, c. 20, gives the right of removal to the defendant in any suit, instituted by a citizen of the state in which the suit is brought against a citizen of another state. According to the uniform decisions of this court it applied only to cases in which all the plaintiffs were citizens of the state in which the suit was brought, and all the defendants citizens of other states. It made no distinction between a suit and the different controversies which might arise therein between the several parties; that is, Congress, when authorizing the removal of the suit, did not permit any controversy therein between particular parties to be carried into the federal court, leaving the remaining controversies in the state court for its determination. If the whole suit could not be removed, no part of it could be taken from the state court.
Thus stood the law until the act of July 27, 1866, c. 288, which provided (omitting such portions as have no bearing upon the present question) that “if in any suit * . * * in any state court * * * by a citizen of the state in which the suit is brought against a citizen of another state * * . * a citizen of the state in which the suij; is brought, is or shall be a defendant, and if the suit, so far as relates * * * to the defendant who is a citizen of a state other than that in which the suit is brought, is or has been instituted or prosecuted for the purpose pf restraining or enjoining him, or if the suit is one in which there can be a final determination of the controversy, so far as it concerns him, without the presence of the other defendants as parties in the cause, then, and in every such case * * * the defendant who is a citizen of a state other than that in which the suit is brought, may, at any time before the trial or final hearing of the *472 cause, file a petition for the removal of the cause as against him, into the next circuit court of the United States, to be held in the district where the suit is pending, and offer good and sufficient security for his entering in such court; * * * copies of said process against him, and of all pleadings, depositions, testimony and other proceedings in said cause affecting or concerning him, and also for his there appearing; * * and it shall be thereupon the duty of the state court to accept the surety, and proceed no further in the cause as against the defendant so applying for its removal; * * * and the said copies being entered as aforesaid in* such court of the United States, the cause shall there proceed in the same manner as if it had been brought there by original process against the defendant who shall have so filed a petition for its removal, as above prescribed. * * * And such removal of the cause, as against the defendant petitioning therefor, into the United States court, shall not be deemed to prejudice or take away the right of the plaintiff to proceed at the same time with the suit in the state court, as against the other defendants, if he shall desire to do so.” 14'Stat, 306.
This provision is explicit, and leaves no room to doubt what Congress intended to accomplish. It proceeds, plainly, upon the ground, among others, that a suit may, under correct pleading, embrace several controversies, one of which may be between the plaintiff and that defendant who is a citizen of a state other than that in which the suit is brought; that to the final determination of such separate controversy, the other defendants may not be indispensable parties; that, in such a case, although the citizen of another state, under the particular mode of pleading adopted by the plaintiff, is made a co-defendant with one whose citizenship is the same as the plaintiff’s, he should not, as to his separable controversy, be required to remain in the state court, and surrender his constitutional right to invoke the jurisdiction of the federal court; but that, at his election, at any time before the trial or final hearing, the cause, so far as it concerns him, might be removed into the federal court, leaving the plaintiff, if he so desires, to proceed, in the state court, against the other defendant or defendants. When there were several defendants to that separable controversy, all of whom are citizens *473 of states other than that in which the suit was brought, they could unite in claiming the removal of such controversy.
Next came the act of March 2, 1867, c. 196, which allows the citizen of the state other than that in which the suit was brought, whether plaintiff or defendant, upon the proper affidavit of prejudice or local influence, filed before the final hearing or trial of the suit, to remove the suit into the federal court. (14 Stat., 558.) It was construed in case of the Sewing Machine Companies, 18 Wall., 553, as allowing a removal, upon such an affidavit, only where there is a common citizenship upon each side of the controversy raised by the suit; that is, all on one side being citizens of the state in which the suit is brought, while all on the other side are citizens of other states. In that case the plaintiff and one of the defendants were citizens of the state where the suit was brought, while two of the defendants were citizens of other states. It was ruled that whatever was the purpose of the act of 1866 as to the particular cases therein provided for, Congress did not intend, by the act of 1867, to give to parties who are citizens of states other than that in which the suit is brought, the right of removal upon the ground of prejudice or local influence, when their co-defendants, or co-plaintiffs, as the case might be, are citizens of the same state with some of the adverse parties. The court, there, evidently had in mind the case where the presence in the suit of all the parties, on the side seeking the removal, was essential that complete justice might be done, and not a suit in which there was a separable controversy, removable under the act of 1866.
We come now to the act of March 3, 1875, c. 137, the second section of which is in these words: “ That any suit of a civil nature, at law or in equity, now pending or hereafter brought in any state court, where the matter in dispute exceeds, exclusive of costs, the sum or value of $500, * in which there is a controversy between citizens of different states, * * either party may remove said suit into the circuit court of the United States for the proper district; and when; in any suit mentioned in this section, there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the plaintiffs or defendants, actually interested in such controversy, may re *474 move said suit to the circuit court of the United States for the proper district.” (18 Stat., pt. 3, 470.)
We had occasion to consider the meaning of the first clause of this section in removal cases, 100 U. S., 468. Disregarding as immaterial the mere form of the pleadings, and placing the parties on opposite sides of the real matter in dispute, according to the facts, we found that the only controversy there was between citizens of Ohio and Pennsylvania on one side, and certain corporations created under the laws of Iowa on the other. And we held that if, in arranging the parties upon the respective sides of the real matter in dispute, all those on one side are citizens of different states from those on the other, the suit is removable, under the first clause of the second section of the act of 1875—-those upon the side seeking a removal uniting in the petition therefor. Whether that suit was not also removable under the second clause of that section we reserved for consideration until it became necessary to construe that part of the statute. The present case imposes that duty upon us.
We may remark that with the policy of the act of 1875 we have nothing to do. Our duty is to give effect to the will of the law-making power when expressed within the limits of the constitution.
We are of opinion that the intention of Congress, by the clause under consideration, was not only to preserve some of the substantial features or principles of the act of 1866, but to make radical changes in the law regulating the removal of causes from state courts. One difference between that act and the second clause of the second section of the act of [875 is, that whereas, the former accorded the right of removal to the defendants who were citizens of a state other than that one in which the suit was brought—if between them and the plaintiff, or plaintiffs, there was, in the suit, a controversy finally determinable as between them, without the presence of their co-defendants, or any of them, citizens of the same state with plaintiffs—the latter gave such right to any one or more of the plaintiffs or the defendants actually interested in such separate controversy. Both acts alike recognized the fact that a suit might, consistently with the rules of pleading, embrace several distinct controversies. But while the act of 1866, in express terms, authorized the removal only of the separable controversy between the plaintiff and the defend *475 ant, or defendants, seeking such removal—leaving the remainder of the suit, at the election of the plaintiff, in the state court—the act of 1875, provided, in that class of cases, for the removal of the entire suit.
That such was the intention of Congress is a proposition which seems too obvious to require enforcement by argument. While the act of 1866 expressly confines the removal to that part of the suit which specially relates to or concerns the defendant seeking the removal, there is nothing whatever in the act of 1875, justifying the conclusion that Congress intended to leave any part of a suit in the state court where the right of removal was given to, and was exercised by, any of the parties to a separable controversy therein. Much confusion and embarrassment, as well as increase in the cost of litigation, had been found to result from the provision in the former act permitting the separation of controversies arising in a suit, removing some to the federal court, and leaving others in the state court for determination. It was often convenient to embrace in one suit all the controversies which were so far connected by their circumstances as to make all who sue, or are sued, proper, though not indispensable, parties. Rather than split up such a suit between courts of different jurisdictions, Congress determined that the removal of the separable controversy to which the judicial power of the United States was, by the constitution, expressly extended, should operate to transfer the whole suit to the federal court.
If the clause of the act of 1875 under consideration is not to be thus construed, it is difficult to perceive what purpose there was in dropping those portions of the act of 1866 which, ex in-dustria, limited the removal, in the class of cases therein provided for, to that controversy in the suit which is distinctly between citizens of different states, and of which there could be a final determination without the presence of the other defendants as parties in the cause.
It remains only to inquire how far this construction of the act of 1875 controls the decision of the case now before us. The complaint, beyond question, discloses more than one controversy in the suit. There is a controversy between the plaintiffs and the Winona and St. Peter Land Company, to the full determination of which the other defendants are not, in any legal sense, indispensable parties, although, as stockholders in the company, they *476 may have an interest in its ultimate disposition. Against the latter, as a corporation, a decree is asked requiring it to convey to the plaintiff an undivided two-ninths of one thirty-seventh of certain lands, and to account for the proceeds of the lands by it sold subsequently to the conveyance from the railroad company.
But the suit as distinctly presents another and entirely separate controversy, as to the right of the plaintiffs to a decree against the individual defendants for such sum as shall be found, upon an accounting, to be due from them upon sales prior to the conveyance from the railroad company. With that controversy the land company, as a corporation, has no necessary connection. It can be fully determined as between the parties actually interested in it, without the presence of that company as a party in the cause. Had the present suit sought no other relief than such a decree, it could not be pretended that the corporation would have been a necessary or indispensable party to that issue. Such a controversy does not cease to be one wholly between the plaintiffs and those defendants, because the former, for their own convenience, choose to embody in their complaint a distinct controversy between themselves and the land company. When the petition for removal was presented, there was in the suit, as framed by plaintiffs, a controversy wholly between citizens of different states; that is, between the plaintiffs, citizens, respectively, of Minnesota and Indiana, and the individual defendants, citizens of New York, Wisconsin and Massachusetts. And since the presence of the land company is not essential to its full determination, the defendants, citizens of New York, Wisconsin and Massachusetts, were entitled, by the express words of the statute, to have the suit removed to the federal court.
It may be suggested that if the complaint has united causes of action, which, under the settled rules of pleading, need not, or should not have been united in one suit, the removal ought not to carry into the federal court any controversy except that which is wholly between citizens of different states, leaving for the determination of the state court the controversy between the plaintiffs and the land company. We have endeavored to show that the land company was not an indispensable party to the controversy between the plaintiffs and the defendants, citizens of New York, Wisconsin and Massachusetts.. Whether those defendants and the land companv were not proper parties to the suit, we do *477 not now decide. We are not advised that any such question was passed upon in the court below. It was not discussed here, and we are not disposed to conclude its determination by the court of original jurisdiction, when it is therein presented in proper form. A defendant may be a proper, but not an indispensable party to the relief asked. In a variety of cases it is in the discretion of the plaintiff as to whom he will join as defendants. Consistently with established rules of pleading he may be governed often by considerations of mere convenience; and it may be that there was or is such a connection between the various transactions set out in the complaint as to make all of the defendants proper parties to the suit, and to every controversy embraced by it, at least in such a sense as to protect the complaint against a demurrer upon the ground of multifariousness or misjoinder.
In Oliver v. Pratt, 3 How., 411, we said, “It was well observed by Lord Cottenham, in Campbell v. Mackay, 1 Mylne & Craig, 603, and the same doctrine was affirmed in this court in Gaines, etc., v. Relf, 2 How., 619, that it is impracticable to lay down any rule as to what constitutes multifariousness as an abstract proposition; that each case must depend upon its own circumstances, and must necessarily be left, where the authorities leave it, to the sound discretion of the court.” We further said that the objection of multifariousness cannot, “ as a matter of right, be taken by the parties, except by demurrer, or plea, or answer, and if not so taken, it is deemed to be waived ;” that although the court may take the objection, it will not do so unless it deems such a course necessary or proper to assist in the due administration of justice. (Story’s Eq. Pl., Secs. 530-540; Shields v. Thomas, 18 How., 259; Fitch v. Creighton, 24 How., 163.) No objection was taken by the defendants in the court below to the complaint upon the ground of multifariousness, or misjoinder, and the plaintiffs should not be heard to make it for the purpose, or with the effect of defeating the right of rerqoval. They are not in any position to say that that right does not exist, because they have made those defendants who were not proper parties to the entire relief asked. The fault, if any, in pleading, was theirs. Under their mode of pleading, whether adopted with or without a purpose to affect the right of removal, accorded by the statute, the suit presents two separate controversies, one of which is wholly between individual citizens of dif *478 ferent states, and can be fully determined without the presence of the other party defendant. The right of removal, if claimed, in the mode prescribed by the statute, depends upon the case disclosed by the pleadings as they stand when the petition for removal is filed. The state court ought not to disregard the petition upon the ground that, in its opinion, the plaintiffs, against whom a removal is sought, had united causes of action, which should, or might have been, asserted in separate suits. Those are matters more properly for the determination of the trial court—that is, the federal court, after the cause is there docketed. If that court should be of opinion that the suit is obnoxious to the objection of multifariousness, or misjoinder, and, for that reason, should require the pleadings to be reformed, both as to subject matter and parties, according to the rules and practice which obtain in the courts of the United States, and if, when that is done, the cause does not really and substantially involve a dispute or controversy within the jurisdiction of that court, it can, under the fifth section of the act of 1875, dismiss the suit, or remand it to the state court as justice requires.
We are of opinion, that, upon the filing of the petition and bond by the individual defendants in the separable controversy between them and the plaintiffs, the entire suit, although all the defendants may have been proper parties thereto, was removed to the circuit court of the United States, and that the order remanding it to the state court was erroneous.
The judgment is reversed, with directions to the court below to overrule the motion to remand, to reinstate the cause upon its docket, and proceed therein in conformity with the principles of this opinion.
Mr. Justice Swayne, while on the bench, participated in the decision of this case in conference, and concurs in this opinion. The judgment now ordered is directed to be entered as of 10th of January, 1881, when the cause was submitted to this court.
Miller, J.—I dissent from the judgment and opinion of the court in this case, and am requested to say that the Chief Justice and Mr. Justice Field also dissent.