MEXICAN NAT. COAL, TIMBER & IRON CO. v. MACDONELL et al.

(Circuit Court, W. D. Texas, San Antonio Division. December 1, 1900.)

No. 103.

FEDERAL COURTS—TRANSFER OF CAUSES—CONSTRUCTION OF STATUTE.

In Act March 2, 1899 (30 Stat. 1002), establishing a division of the circuit court in the Western district of Texas, at Laredo, and providing that pending suits against parties residing in certain counties may be transferred to such division "on the application of either party," the words "either party" refer to all the individuals upon the one side or the other of the suit, and a suit can only be transferred on the application of all the plaintiffs or defendants.

In Equity. On motion to transfer cause to Laredo division.

Denman, Franklin & McGown, for complainant.
C. L. Bates and Duval West, for cross complainant.
Upson, Newton & Ward, William Aubrey, J. O. Nicholson, and
E. A. Atlee, for defendants.

MAXEY, District Judge. The bill in this case was filed by the
complainant at the San Antonio division of the court on March
6, 1897. By the original bill and subsequent pleadings quite a num-
ber of persons were made parties defendant, and among them the
following: Allan Macdonell, Mary Macdonell, Daniel Milmo, Albert
Urbahn, W. H. Mowry and his wife (Margarita B. Mowry), Jose
Benavides, Santos Benavides, Miguel Benavides, Anastacia Bena-
vides, Natividad Herrera and his wife (Ester B. Herrera), William
Anderson, D. T. Roy, and Thomas T. Brewster,—all of whom are
alleged to be citizens of Texas, and residents of Webb county.
Thomas Carmichael and A. B. Frank, citizens of New York, and
several foreign corporations appear, also, as defendants; but the
further enumeration of parties is not deemed essential to the deci-
sion of the question arising upon the present motion. The com-
plainant claims by its bill an interest in certain coal lands included
within the limits of a tract known as the "Santo Tomas Ranch,"
situated in Webb county, Tex. Among other things, the bill prays
for an accounting, for the appointment of a receiver, and for a de-
cree settling the rights and interests of the respective parties in
the property in controversy. It is not necessary to refer further to
the merits of the case, except to state that it was conceded by coun-
sel upon the argument that all the persons named as defendants
are necessary parties to the suit.

The only question to be now determined is whether the suit shall
remain here, or be transferred to the Laredo division of the court.
A motion to transfer it to the Laredo division was filed by the de-
fendants Albert Urbahn, Daniel Milmo, Mowry and wife, Herrera
and wife, and Jose Benavides, and the right of such defendants to
transfer the causes is resisted by the complainant and at least one
of the defendants. The motion was predicated upon the act of con-
gress establishing a division of the court at Laredo, approved March
2, 1899 (30 Stat. 1002, c. 393). That part of section 2 of the act
pertinent in this connection to be considered reads as follows:

"That all actions or proceedings now pending in the courts at Brownsville
and San Antonio against parties residing in the counties of Webb, Zapata,
Duval, Encinal, La Salle and McMullen may, on the application of either party
to such actions or proceedings, be transferred to the court at the city of
Laredo: and in case of such transfer all papers and files therein, with copies
of all journal entries, shall be transferred to the office of the deputy clerk of
the court at the city of Laredo, and the same shall proceed in all respects as
if originally commenced in said court."

It will be observed that the act authorizes the transfer upon the
application of "either party to such actions or proceedings," and it
devolves upon the court to decide whether all the defendants, ad-
mitted to be necessary parties to the suit, must join in the applica-
tion. If the expression "either party" be held to include all the
individuals upon one side of the controversy, then an application

made by less than all would be insufficient to authorize the transfer. If, however, "either party" be construed to mean any one or more of the individuals, plaintiffs or defendants, it is clear that an application made by seven defendants, as is the case here, would be sufficient. While the act under consideration has not received judicial interpretation, the expression "either party," as it appears in the first clause of section 2 of the act of March 3, 1875 (18 Stat. 470), providing for the removal of causes from the courts of the states to those of the United States, has been construed by federal courts in several reported cases, and quite uniformly to the effect that, to authorize a removal of the suit under that clause of the section, it was necessary for all the parties to unite in the application. Referring to section 2 of the act of 1875, above mentioned, Judge Brown, now associate justice of the supreme court, used this language:

"In construing the first clause of this section it has been uniformly held that the words 'either party' comprehended all the individuals upon one side of the controversy, and that all such individual parties must unite in the petition." Smith v. McKay (C. C.) 4 Fed. 354.

In Ruckman v. Land Co. (C. C.) 1 Fed., at page 370, it was said by Judge Nixon:

"The removal is prayed for because the controversy in the suit is between citizens of different states. But that is one of the grounds of removal stated in the first clause of the section, in which the united action of all the defendants or all the plaintiffs is necessary to make the petition operative."

In speaking of what he deemed an inconsistency between the first and second clauses of the second section of the act of 1875, Judge Lowell said:

"It is not easy to give a reason for the inconsistency between two clauses of the same sentence or paragraph; but it exists, because in the first clause 'either party' undoubtedly means all the plaintiffs or all the defendants; and in the second the language is clear that any one plaintiff or defendant interested in the particular controversy may petition. The courts reconcile this conflict as well as they may by holding that the first clause refers to an ordinary action at common law, like the one at bar, where there is but one party on each side, no matter of how many persons that party may consist, and that in such actions the plaintiffs or defendants must act as a unit; and the second, to suits in equity, where there may be distinct controversies between different sets of plaintiffs or defendants." Maine v. Gilman (C. C.) 11 Fed. 215.

In Thompson v. Railway. Co. (C. C.) 60 Fed. 774, it was said by Judge Sanborn:

"It is well settled under this clause of act of 1875 * * * [the first clause of the second section] that a removal could not be effected unless all the parties on the same side of the controversy united in the petition."

Insurance Co., v. Champlin (C. C.) 21 Fed. 85; Mayor, etc., of City of New York v. Independent Steamboat Co., Id. 593; 20 Am. & Eng. Enc. Law, 980. See, also, Removal Cases, 100 U. S. 457, 25 L. Ed. 593; Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514; Blake v. McKim, 103 U. S. 336, 26 L. Ed. 563; Fletcher v. Hamlet, 116 U. S. 408, 6 Sup. Ct. 426, 29 L. Ed. 679; Stone v. South Carolina, 117 U. S. 430, 6 Sup. Ct. 799, 29 L. Ed. 962.

The expression "either party," appearing in the act to establish the Laredo division of the court, evidently refers, as it does in the removal act of 1875, to the individuals upon the one side or the other of the suit, acting together as a unit. The individuals composing the party, whether plaintiffs or defendants, must all unite in the application to remove. As the present application embraces only seven of a much larger number of defendants, it must be denied. Ordered accordingly.