TEXAS EMPLOYERS INS. ASS'N v. FELT.
No. 11234.

Circuit Court of Appeals, Fifth Circuit.
June 21, 1945.

M. L. Cook, of Houston, Tex., for appellant.

F. Fox Benton, of Houston, Tex., for appellees.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment under the workmen's compensation law of Texas, awarding compensation to the appellees for the death of their husband and father. The action was brought by appellees in a Texas state court against three compensation insurance carriers incorporated under the laws of California, Connecticut, and Texas, respectively.

The deceased operated a tractor for various persons engaged in heavy excavation work; they severally rented the machine and severally employed the operator. Because it was uncertain for whom, if anyone, the deceased was working when killed, claims were presented against all three of the parties who were employing him at the crucial period. This action was filed against the several defendants, it being alleged in the alternative that the deceased was employed by each of the three persons to whom the defendants had issued insurance policies.

Upon the petition of one of the nonresident defendants, alleging a separable controversy and other requisite jurisdictional facts, the entire suit was removed to the United States district court. No motion to remand was made; no order for separate trials was sought,[1] and no jurisdictional question was raised until after the return of the verdict. It was then claimed that, since the court below peremptorily instructed a verdict for the two non-resident defendants, it had no jurisdic-

[1] Rule 20(b) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

tion to render judgment against the resident defendant.

Since there was no voluntary dismissal by the plaintiffs,[2] and the peremptory instruction was granted at the request of the non-resident defendants in a trial upon the merits, we think the court below did not lose jurisdiction to dispose of the entire suit. It is true that ancillary jurisdiction fails when jurisdiction over the principal controversy fails, but the principal jurisdiction did not fail in this instance. Only one verdict was rendered; it was against the resident and in favor of the non-resident defendants. Only one judgment was entered; it adjudicated the rights and liabilities of all parties, including the non-resident defendants.

If federal jurisdiction once rightfully attached in this entire suit, it was not so precarious as to depend upon the result of a trial upon the merits.[3] The statutory provision for remand or dismissal at any time, if it shall appear to the satisfaction of the court that the suit does not really and substantially involve a dispute or controversy properly within its jurisdiction,[4] does not give countenance to the idea that the proceeding is to be retained in the federal court until final adjudication on the merits as to the non-resident and then remanded to the state court without deciding the remaining issues between resident parties who were removed thereto in invitum.[5]

A more difficult question is whether the entire suit was removable. This depends upon whether, at the time the petition for removal was filed, there was a single suit containing a separable controversy wholly between citizens of different states or whether there were three separate suits consolidated in a single proceeding.[6] A suit may, consistently within the rules of pleading, embrace several distinct controversies.[7] Separate defenses do not create separable controversies.[8] To entitle one to removal on the ground of a separable controversy, two or more causes of action (one of which would be removable if separately filed) must be united in one suit.[9]

The right of removal on the ground of a separable controversy, if claimed in the mode prescribed by statute, depends upon the case as disclosed by the pleadings in the state court as they stood at the time the petition for removal was filed. The petition ought not to be denied by the state court upon the ground that, in its opinion, the plaintiff has united causes of action which should have been asserted in separate suits. This issue and all questions of misjoinder or multifariousness are matters for the determination of the federal court after the cause is removed thereto. If that court finds that any such objection is well taken, it may require the pleadings to be reformed, and dismiss or remand the entire suit or a portion thereof as justice requires.[10]

All three contracts of employment with the deceased were made and performed in Texas; the injury and death occurred in Texas; the substantive rights and liabilities of the parties were governed by the law of Texas. The Texas procedure relative to alternative actions is

---

[2] As was referred to in St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 295, 58 S.Ct. 586, 82 L.Ed. 845.

[3] Cf. Whitcomb v. Smithson, 175 U.S. 635, 638, 20 S.Ct. 248, 250, 44 L.Ed. 303, wherein the court said: "The right to remove was not contingent on the aspect the case may have assumed on the facts developed on the merits of the issues tried."

[4] Judicial Code, Sec. 37, 28 U.S.C.A. § 80.

[5] Cf. Rosenbaum v. Bauer, 120 U.S. 450, 459, 7 S.Ct. 363, 30 L.Ed. 743.

[6] Des Moines Elevator & Grain Co. v. Underwriters' Grain Association, 8 Cir., 63 F.2d 103.

[7] Barney v. Latham, 103 U.S. 205, 212, 26 L.Ed. 514.

[8] Fidelity Insurance, Trust & Safe Deposit Co. v. Huntington, 117 U.S. 280, 281, 6 S.Ct. 733, 29 L.Ed. 898; Rosen-thal v. Coates, 148 U.S. 142, 13 S.Ct. 576, 37 L.Ed. 399.

[9] Blake v. McKim, 103 U.S. 336, 26 L.Ed. 563; Hyde v. Ruble, 104 U.S. 407, 409, 26 L.Ed. 823; Fraser v. Jennison, 106 U.S. 191, 194, 1 S.Ct. 171, 27 L.Ed. 131; Ayres v. Wiswall, 112 U.S. 187, 5 S.Ct. 90, 28 L.Ed. 693; Brooks v. Clark, 119 U.S. 502, 7 S.Ct. 301, 30 L.Ed. 482; Torrence v. Shedd, 144 U.S. 527, 12 S. Ct. 726, 36 L.Ed. 528.

[10] Geer v. Mathieson Alkali Works, 190 U.S. 428, 23 S.Ct. 807, 47 L.Ed. 1122; City of Gainesville v. Brown-Crummer Co., 277 U.S. 54, 56, 48 S.Ct. 454, 72 L. Ed. 781; Pullman Co. v. Jenkins, 305 U. S. 534, 59 S.Ct. 347, 83 L.Ed. 334; Treinies v. Sunshine Min. Co., 308 U.S. 66, 72, 60 S.Ct. 44, 84 L.Ed. 85; Harrison v. Harrison, D.C., 5 F.2d 1001; Barnett v. Mayes, 10 Cir., 43 F.2d 521.

identical with Rule 20 of the Federal Rules of Civil Procedure.[11] Therefore, we do not need to distinguish between state and federal procedural law except to say that removal procedure is governed by federal statutes and that after the cause has been removed the procedure is governed by the federal rules.[12]

▮ Rule 20 provides that all persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction or occurrence and if any question of law or fact common to all of them will arise in the action. This rule does not affect jurisdiction,[13] but it regulates procedure where the court already has jurisdiction, and in this case it effectively disposes of any pertinent question as to the misjoinder of defendants who are sued only in the alternative.[14] The option given by Rule 20 to join the defendants in one action did not create joint liability. The permitted joinder is procedural and not substantive.[15]

A better illustration of the procedural advantage of the right to seek alternative relief in one action against several defendants could scarcely be found than the very case before us on this appeal. Without this remedy, three trials before different juries, one in the state court and two in the federal court, might have been necessary. If all the defendants had been citizens of Texas, this suit would have remained in the state court and have been triable in one action;[16] if all the defendants had been non-residents, a single action might have been brought in the federal court, which would have been triable as one suit;[17] from this it follows that there is no procedural reason why a single suit may not be maintained in the federal court if the plaintiff's right to relief arises out of the same transaction and presents a ques-

---

[11] Rule 40 of Vernon's Texas Rules of Civil Procedure.

[12] 28 U.S.C.A. §§ 72, 73, Judicial Code, Secs. 29, 30; Rule 81(c) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[13] Rule 82, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

[14] Murphree v. Mississippi Publishing Corporation, 5 Cir., 149 F.2d 138, wherein the district court had jurisdiction over the subject matter but would have been unable to obtain personal jurisdiction over one of the parties without the authority granted by Rule 4(f), 28 U.S.C.A. following section 723c. The application of this rule did not affect jurisdiction or venue. The federal court had jurisdiction solely because of diversity of citizenship and involvement of the requisite amount; the venue was properly laid because the plaintiff was a resident of the particular district where the suit was brought. Rule 4(f) merely enabled the court (which already had jurisdiction and venue) to make its jurisdiction effective by service of process upon the defendant in another district of the same state.
Cf. Scott v. Neely, 140 U.S. 106, 11 S. Ct. 712, 35 L.Ed. 358, and Cates v. Allen, 149 U.S. 451, 13 S.Ct. 977, 37 L.Ed. 804, the former of which was dismissed and the latter remanded for want of equitable jurisdiction of a suit in which a claim properly cognizant only at law was united in the same pleadings with a claim for equitable relief. In each,

the district court, as a federal court, had jurisdiction of the subject matter and the parties, but could not administer the blended legal and equitable remedy provided by a state statute. These cases were decided prior to the promulgation of the present rules of civil procedure. Quaere: Now that the federal courts have a blended procedure at law and in equity with only one form of action which is known as a civil action, would it be necessary to dismiss or remand a similar suit? Regardless of how this question may be answered, it illustrates how, at the time these cases were decided, the district court of the United States was incapable of exercising its jurisdiction over the subject matter and the parties for procedural reasons. At that time the court had no right to transfer cases or portions thereof from its law to its equity side, and vice versa. Under present federal rules of procedure, a common-law jury trial to establish the debt, and equitable relief to subject the property to the payment of the same, may be afforded the parties in one action. The Federal Rules of Civil Procedure have not extended but they have unfettered the jurisdiction of the district courts of the United States.

[15] Young v. Southern Pacific Co., 2 Cir., 15 F.2d 280; Des Moines Elevator & Grain Co. v. Underwriters' Grain Association, 8 Cir., 63 F.2d 103.

[16] Rule 40 of Vernon's Texas Rules of Civil Procedure.

[17] Rule 20 of Federal Rules of Civil Procedure.

tion of law or fact common to all of the defendants. Let us see if the complaint herein meets these requirements for a united action in the alternative.

■ Immediately prior to his death, the deceased was under separate contracts of employment to operate the tractor for each of his employers. The disputed questions of fact common to all the defendants in this case are: By whom, if anyone, was the deceased employed at the time of his death, and was he fatally injured in the course of his employment? There is no other issue of fact in the case. The determination of this one issue will fix the liability or non-liability of all the defendants. In tort cases, plaintiffs have an optional joint right as well as joint remedy;[18] here the optional joinder is only procedural; the right remains several. There was only one cause of action, one claim for compensation under the law and the facts, but there were three separate controversies with the defendants as to which of them was bound to pay the amount claimed. These several controversies, within the rules of pleading, were united in one action and tried together. Two of the controversies were wholly between citizens of different states, and each involved the requisite federal jurisdictional amount; the other was wholly between citizens of the same state, and by itself would not have been removable to the federal court.

■ Because only one recovery can be had,[19] it is suggested that only one controversy is alleged by the plaintiffs in their suit. A reading of the complaint discloses three separate and distinct controversies, one against each of the defendants, alleged in the alternative. All three controversies appear upon the face of the complaint, and were so real and substantial that no defendant interposed a motion to dismiss the action as to itself. The theory that only one controversy is asserted is the antithesis of the contention previously discussed that three separate suits are embraced in a single proceeding. If the complaint contained only one controversy, no part of the suit was removable; if there were three separate suits in a single proceeding, the action should have been divided, two removed to the federal court, and one left in the state court; if there were three controversies in one suit, as we think, the entire suit was removable. In the absence of a fraudulent joinder, the separable-controversy provision of the removal statute is broad enough to embrace alternative separable controversies.

■ The specific remedy in the alternative given by the new rules of federal procedure affects the exercise of jurisdiction in removal cases, notwithstanding the provision that these rules may not be construed to extend or limit federal jurisdiction. Rule 82 means that the statutory jurisdiction of the district courts of the United States, and the venue of actions therein, were not changed by adoption of the rules; it does not mean that the exercise of federal removal jurisdiction may not be indirectly affected by the choice of remedies afforded plaintiffs. The removal statute does not ignore local rights and remedies. It deals with *controversies within a suit* pending in a state court. Plaintiffs may sue jointly, severally, or in the alternative. The whole case is removable if in one suit in a state court a separable controversy, containing the requisites of federal jurisdiction, appears upon the face of the complaint. Such requisites are fixed and constant, but litigants may sometimes shape their complaint so as to fall within or without the orbit of federal jurisdiction; and it is always open to any defendant to show that parties or controversies have been fraudulently joined and should not be considered in determining the right to remove.

■ If, as we think, no rule of procedure requires this suit to be split into separate parts, let us see if federal jurisdictional limitations demand it; if so, procedural convenience must yield to jurisdictional necessity. The history of the present removal statute reveals the intention of Congress on the subject of splitting a suit into two parts, removing one and leaving the other in the state court.[20] Though the ground of removal be a separable con-

---

18 Pirie v. Tvedt, 115 U.S. 41, 5 S.Ct. 1034, 1161, 29 L.Ed. 331; Chicago, B. & Q. R. Co. v. Willard, 220 U.S. 413, 31 S.Ct. 460, 55 L.Ed. 521.

19 Only one recovery was sought in the following cases, but it was held that the suit contained a separable controversy: Strother v. Union Pacific R. Co., D.C.,

220 F. 731; Flas v. Illinois Central R. Co., D.C., 229 F. 319; Bedell v. Baltimore & O. R. Co., D.C., 245 F. 788.

20 Removal Statutes.
Judiciary Act of September 24, 1789, 1 Stat. 73-79, contained no provision for removal on the ground of separable controversy.

troversy within the suit, it is well settled that the effect of the removal is to take to the federal court not merely the controversy between citizens of different states, but the entire suit. The words of the statute are "may remove said suit into the district court"; and the entire suit goes to the federal court even though it contains a separable controversy which is wholly between citizens of the same state and which can be fully determined as between them.[21]

The Supreme Court has never discussed the constitutionality of the provision for removal of the entire suit, containing a controversy wholly between citizens of the same state, and the lower federal courts have touched on it in but few cases.[22] From 1789 until 1866 the whole suit remained in the state court, even though it contained a separable controversy of the requisite jurisdictional amount wholly between citizens of different states, unless all of the defendants joined in the petition to remove and were citizens of different states from the plaintiff or all of the plaintiffs.

By the act of July 27, 1866, the said separable controversy was made a ground of removal by an alien or non-resident defendant, but without prejudice to the right of the plaintiff to proceed at the same time with the suit in the state court against the other defendants. Much confusion and embarrassment, as well as increase in the cost of litigation, resulted from this procedure in cases where, consistently within the rules of pleading, all of the controversies might conveniently have been disposed of in one suit.[23] Thereupon, by the act of March 3, 1875, the prior statute was amended, and the provision for leaving part of the suit in the state court was omitted. Dealing with this clause, the court, in Barney v. Latham, supra, held that the intention of Congress to require removal of the whole suit was obvious, and said that otherwise it was difficult to perceive what purpose there was in omitting those portions of the act of 1866 leaving part of the case in the state court.

The act of 1887–1888 made no change with reference to removing the entire suit, but restricted the right of removal to one or more of the defendants actually interested in such separable controversy. These provisions have not been affected by subsequent legislation, and the law at the present time is that the entire suit is removable by one or more of the defendants actually interested in such separable controversy.

Since courts are disinclined to adopt an interpretation of a statute that would extend its operation beyond what is warranted by the Constitution[24] and the Supreme Court has uniformly construed this provision to authorize removal of the whole case to the federal court, by necessary implication it has held the provision in question to be constitutionally valid. Can these decisions "stand appeal to the Con-

---

Act of July 27, 1866, 14 Stat. 306, provided for removal by an alien or non-resident defendant of the separable controversy only, leaving remainder of suit in state court.

Act of March 2, 1867, 14 Stat. 558, amended act of 1866 by authorizing removal of separable controversies between citizens of different states upon petition of either plaintiff or defendant (omitting aliens), and extended right of application, when prejudice or local influence existed, to any time before the trial or final hearing in the state court.

Act of March 3, 1875, 18 Stat. 470, ch. 137, provided for removal of the whole suit by one or more plaintiffs or defendants actually interested in separable controversies wholly between citizens of different states.

Act of March 3, 1887, 24 Stat. 552, ch. 373, repealed all former acts, and provided for removal of the whole suit by one or more of the defendants actually interested in the separable controversy.

Act of Aug. 13, 1888, 25 Stat. 433, ch. 866, corrected and re-enacted the act of 1887.

Sec. 28 of the Judicial Code, 36 Stat. 1094, 28 U.S.C.A. § 71, approved March 3, 1911, reenacted the separable-controversy provision of the act of 1888 without change, except the words district court were substituted for circuit court.

[21] City of Gainesville v. Brown-Crummer Inv. Co., 277 U.S. 54, 48 S.Ct. 454, 72 L.Ed. 781.

[22] Ruckman v. Ruckman et al., C.C., 1 F. 587; Sheldon et al. v. Keokuk Northern Line Packet Company, C.C., 1 F. 789; Iowa Homestead Company v. Des Moines Navigation & Railroad Co., C.C., 8 F. 97; Hoffman v. Lynch, D.C., 23 F.2d 518.

[23] Barney v. Latham, 103 U.S. 205, 213, 26 L.Ed. 514.

[24] See Case of The Sewing Machine Companies, 18 Wall. 553, 21 L.Ed. 914.

stitution and its historic purposes"? [25] In quest of the answer to this question, we examine anew the constitutional power of Congress to provide for the removal of the whole suit, even though it contains a controversy that, by itself, could neither be brought in nor removed to the federal court.

■ The effect of Article 3 of the Constitution is not to vest jurisdiction in the inferior courts over cases and controversies designated therein, but to delimit those in respect of which Congress may confer jurisdiction upon such courts. The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the particular instances, but it requires an act of Congress to confer it. The Congress may give, restrict, or withhold such jurisdiction as it sees fit, within the boundaries fixed by the Constitution, but it may not grant jurisdiction beyond those boundaries unless as a necessary incident to an effectual exercise of jurisdiction over the enumerated cases and controversies. [26]

■ Diversity of citizenship has been a ground of jurisdiction in the lower federal courts from the foundation of the Government to the present time, but Congress has never undertaken to vest such courts with independent jurisdiction of controversies between citizens of the same state. The jurisdiction of merely local controversies that the federal district courts exercise in cases of removal on the ground of separable controversies is a different class of jurisdiction from that ordinarily defined by the Constitution and statutes of the United States. It is of a class variously called ancillary, auxiliary, dependent, incidental, or supplementary. It is an extraordinary kind of ancillary jurisdiction in that it arises from an act of Congress expressly conferring it. Under the statute, it exists, not in its own right, but by virtue of its relation to a controversy of which the court is capable of receiving, and has been given, independent jurisdiction under the Constitution. It is analogous to such ancillary jurisdiction as is exercised by the courts by virtue of their inherent powers.

■ The economical and expeditious administration of justice often requires more than one controversy to be embraced in a single suit, regardless of the citizenship of the parties. Where one of such controversies would be removable to the federal court if separately brought in a state court, Congress has a reasonable range of legislative discretion to determine whether such suit, in its entirety, shall be left in the state court, removed to the federal court, or split into two parts. [27] We have seen that this discretion was first exercised for 77 years by leaving the entire suit in the state court; that from 1866 to 1875 the suit was split into two parts, one part being left in the state court and the other removed to the federal court; and that, since the act of 1875, the entire suit has been removable to the federal court.

The reasons for granting, restricting, or withholding jurisdiction during the three periods mentioned were considerations for the practical judgment of Congress. That it was acting within the limits of its constitutional authority in granting to the lower federal courts both original and removal jurisdiction of controversies between citizens of different states is beyond question. The confusion, embarrassment, and increase in the cost of litigation, found to

---

[25] Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 491, 492, 59 S.Ct. 595, 604, 83 L.Ed. 927, 120 A.L.R. 1466, wherein it is said: "The ultimate touchstone of constitutionality is the Constitution itself and not what we have said about it." Cf. Erie Railroad Company v. Tompkins, 304 U. S. 64, 58 S.Ct. 817, 828, 82 L.Ed. 1188, 114 A.L.R. 1487, wherein the court rejected as a precedent "the unconstitutionality of the course pursued by the federal courts."

[26] Compare the power of Congress to regulate intrastate commerce, if, by reason of the interblending of operations, it is necessary to do so in order to make effective its regulation of interstate commerce. The Minnesota Rate Cases, (Simpson v. Shepard), 230 U.S. 352, 432, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A., N.S., 1151, Ann.Cas.1916A, 18; Houston, E. & W. Texas R. Co. v. United States, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; Railroad Comm. of Wisconsin v. Chicago B. & Q. R. Co., 257 U.S. 563, 42 S.Ct. 232, 66 L.Ed. 371, 22 A.L.R. 1086; Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092.

[27] "Congress, therefore, has authority to make laws necessary and proper to extend the judicial power effectively over such controversies, even when developed in state courts. Congress is the primary judge of what is necessary and proper." Hoffman v. Lynch, D.C., 23 F.2d 518, 522.

result from the act of 1866 [28] were sufficient grounds to warrant the enactment of the act of 1875, providing for the removal of the whole suit, thereby expressly conferring upon the federal courts ancillary or incidental jurisdiction to hear and determine a controversy wholly between citizens of the same state.

As a court of equity never does things by halves but disposes of the whole case, once its jurisdiction has attached, the federal court, on removal, may constitutionally dispose of the whole suit if it contains a separable controversy wholly between citizens of different states that can be fully determined as between them. This ancillary jurisdiction, under legislative grant, obtains by virtue of the relation of the local controversy to the controversy between citizens of different states; and the amount involved, the citizenship of the parties, and the federal or non-federal character of the issues presented are immaterial.

Turning to the merits, we find no reversible error in the record. The verdict of the jury, which is supported by substantial evidence, establishes that Felt was an employee of Ray (for whom appellant was compensation insurance carrier) and was killed in the course of his employment. It also establishes the following facts:

The deceased met his death about 9:30 a. m. on Wednesday, September 9, 1943. No witness saw exactly what occurred, but Felt was found pinned beneath his overturned bulldozer on a roadway within the Galveston air base. The truck used to haul the bulldozer from place to place was nearby, with the loading ramp attached.

For several days prior to the accident, the bulldozer had been rented alternately by Randon Construction Company for work at the air base, and by Ray for work at Texas City, eight or nine miles away. Felt was hired to operate the machine when either used it, and he moved it from one job to the other as the demands of the users required. On Saturday and Monday preceding the accident, Felt operated the bulldozer for Ray at Texas City. On Tuesday morning, he assured Ray's agent that he would return for further work as soon as circumstances permitted, and transported the bulldozer to the Galveston air base where he operated it all that day. On Tuesday night, it rained heavily at Galveston, and Felt intended to operate the machine at Texas City on Wednesday if the ground was too wet for work at Galveston.

On Wednesday morning, he went to the air base and was informed that he would not be needed there for several days. He asked the witness Ross to go to Texas City and bring him back at noon to get his truck. He then proceeded, with the assistance of Ross, to start the motors of the truck and the bulldozer; after the motors were started, Ross left before the accident. The details of immediately succeeding events were not disclosed by the record, but in some manner the truck and bulldozer were moved a slight distance; and, within ten or fifteen minutes, Felt was found crushed beneath the bulldozer. The position of the truck, which had its ramp attached, as well as the time of the accident, indicated that Felt was trying to drive the bulldozer up the ramp and onto the truck when the bulldozer overturned. In furtherance of the plan, about an hour and a half later, Ross went to Texas City to keep his appointment, and there learned for the first time of Felt's death.

It was for the jury to draw all fair and reasonable inferences from the facts in evidence. It has done so and has found that Felt, from the moment he began to start the motors of the vehicle, was engaged in the performance of duties for and pursuant to his employment by Ray. The record also shows that Ray was obligated to pay rent for the bulldozer and wages to Felt from the moment he began the business of moving the bulldozer to Texas City for work there; also that Ray had control over Felt's services and the power to discharge him at such time. Every normal characteristic of the employer-employee relationship was present.

The judgment appealed from is affirmed.

---

[28] Barney v. Latham, 103 U.S. 205, 213, 26 L.Ed. 514.