PEOPLE OF THE STATE OF ILLINOIS *ex rel.* ATTORNEY GENERAL Mc-
CARTNEY *v.* ILLINOIS CENT. R. Co. and others.

*(Circuit Court, N. D. Illinois.   1883.)*

1. REMOVAL OF CAUSE — CASE ARISING UNDER CONSTITUTION AND LAWS OF
   UNITED STATES—SEPARABLE CONTROVERSY.

   The attorney general of the state of Illinois filed an information in chancery
   in the state court, in behalf of the people of that state, against the Illinois
   Central Railway Company, the city of Chicago, and the United States, averring
   that the state of Illinois was admitted into the Union as one of the states carved
   out of the north-west territory, ceded to the United States by the state of
   Virginia, and that by virtue of the act of cession and the performance of its
   conditions the state of Illinois acquired as well the jurisdiction over, as the
   soil of, the bed of Lake Michigan within its boundaries, and the right, title,
   and authority into and over the same absolutely and completely, subject only
   to the right of the United States to regulate commerce on said lake; that in
   1869 an act was passed by the state legislature granting part of the land sub-
   merged by Lake Michigan to the Illinois Central Railroad Company; that in
   1873 this act was repealed; and praying that the title of the state to this land
   be established.   The answer of the railroad company claimed that the act of
   1873 was in violation of section 10, art. 1, of the federal constitution, and of
   its fourteenth amendment; and the answer of the city admitted the title of the
   state to the land.   *Held*, that the case was one arising under the constitution
   and laws of the United States, and was removable from the state court, under
   the act of 1875, notwithstanding some of the questions might be determined
   without reference to the federal constitution or laws of congress, and that the
   federal questions upon which the decision of the cause mainly depended, were
   raised by the defendant company and not by the state, which instituted the suit.
   *Held, also,* that whether the city is a proper party or not, there is in the suit a
   separable controversy between the state and the railroad company, which could
   be fully determined between them without the presence of the city as a party.
   *Held, further,* that if the city was a proper party, she was in interest on the
   side of the state in its controversy with the railroad company, and her failure
   to join in the petition for removal was, therefore, immaterial.

2. SAME—AUTHORITY TO ENTER APPEARANCE OF UNITED STATES.

   Whether any officer of the United States has authority to enter the appear-
   ance of the government as a defendant in such a case, *quære.*

In Equity.

This information in chancery was filed March 1, 1883, in the cir-
cuit court of Cook county, by the attorney general of the state, in be-
half of the people of Illinois, against the Illinois Central Railroad Com-
pany, the city of Chicago, and the United States of America.   On the
tenth day of April, 1883, the railroad company, having previously
answered, filed in the state court its petition, accompanied by the
required bond, for the removal of the cause into this court.   The pres-
ent hearing is upon a motion in behalf of the state to remand the

cause, upon the ground that it is not one of which this court can rightfully take jurisdiction.

The information states that the United States acquired the territory north-west of the Ohio river by cession from the state of Virginia, on condition that there should be formed therefrom not less than three nor more than five states; each entitled, as soon as she had 65,000 free inhabitants, to admission into the Union on an equal footing in all respects with the original states; and that in the year 1818 there was carved out of that territory, and admitted into the Union, the state of Illinois, the boundaries whereof were defined by congress, and accepted and ratified by the state in its original constitution, as follows: Beginning at the mouth of the Wabash river; thence up the same and with the line of Indiana to the north-west corner of that state; thence east with the line of the same state to the middle of Lake Michigan; thence north along the middle of said lake to the north latitude, 42 deg. 30 min.; thence west to the middle of the Mississippi river; and thence down along the middle of that river to its confluence with the Ohio river; thence up the latter river along its north-western shore to the beginning. The information also shows that by virtue of the Virginia act of cession, and the performance of its conditions, the state acquired as well the jurisdiction over, as the soil of, the bed of Lake Michigan within its boundaries, and the right, title, and authority in, to, and over the same, absolutely and completely; subject only to the right of the United States to supervision over the navigable waters of the lake, when exerting their power to regulate commerce with foreign nations and among the several states; that the state thus possessing the sovereign power over and proprietorship of the described portion of Lake Michigan, and the bed thereof, she has the right to protect and defend the same from encroachment, and to sue for relief in respect of any encroachment or infringement of its sovereign or proprietary rights therein.

It is then averred that in the year 1869 the Illinois Central Railroad Company procured to be passed by the legislature of Illinois an act which took effect, by the passage thereof over the veto of the governor of the state, on the sixteenth day of April, 1869, and by which all the right, title, and interest of the state in and to so much of fractional section 15, township 39 N., range 14 E. of the third principal meridian, in said city of Chicago, as was situated east of Michigan avenue and north of Park row, and south of the south line of Monroe street and west of a line running parallel with and 400

feet east of the west line of Michigan avenue, was granted to the city of Chicago, with power to sell the same and use the proceeds of such sale as a park fund, to be distributed by the common council and devoted to park purposes in that city; that by the same act the right of that company, under the grant from the state in its charter, and under and by virtue of the appropriation, occupancy, use, and control, and the riparian ownership incident to such grant, appropriation, occupancy, use, and control, in and to the lands, submerged or otherwise, lying east of the line running parallel with and 400 feet east of the west line of Michigan avenue, in said fractional sections 10 and 15, was confirmed; and all the right and title of the state in and to the submerged lands constituting the bed of the lake, and lying east of the tracks and breakwater of the company, *for the distance of one mile,* and between the south line of the south pier, extending easterly and in a line extended eastward from the south line of lot 21, and south of and near the round-house and machine-shops of said company, be granted in fee to the Illinois Central Railroad Company, its successors and assigns: provided, however, that the fee to said land should be held by the company in perpetuity, and that the latter should not have the power to grant, sell, or convey the fee in the same; and provided, also, that nothing contained in the act should authorize obstructions to the Chicago harbor, or impair the public right of navigation.

By the same act it was further provided that the right and title of the state of Illinois in and to the lands, submerged or otherwise, lying north of the south line of Monroe street, and south of the south line of Randolph street, and between the east line of Michigan avenue and the track and the roadway of the Illinois Central Railroad Company, being parts of sections 10 and 15, should be granted in fee to the Illinois Central Railroad Company, the Chicago, Burlington & Quincy Railroad Company, the Michigan Central Railroad Company, their successors and assigns, for the erection thereon of a passenger depot, and for such other purposes as the business of said companies might require. In consideration of the grant of the three blocks of lands last mentioned to such companies, they were required to pay the city of Chicago the sum of $800,000. Such are the averments in the information as to the act of 1869.

The information then alleges:

"That no action was had or taken upon said grant, and that said act (1869) was, on the fifteenth day of April, 1873, repealed by an act of the legislature of said state of Illinois, which said act was approved by the governor on

the date last aforesaid; that said repeal was effected before possession had been taken of the land so purported to be granted as aforesaid, and before any act had been done upon said land by virtue or in pursuance of the power and authority given to said railroad company by said act. And your informant charges that the repeal of said act had the effect to withdraw and take from said Illinois Central Railroad Company, and revest in the state of Illinois, all title which passed from said state to said railroad company by the act of 1869, above recited; that said act of 1869, while purporting to grant a considerable portion of the body of Lake Michigan to the Illinois Central Railroad Company, was inoperative and ineffectual for that purpose for want of capacity in said railroad company to accept and receive the same, as reference to its charter passed in 1851, as above recited, will fully appear. And said act was also inoperative by reason of the peculiarity in the terms of the grant,—the legislature, by said act, purporting to grant the fee to said railroad company, and, by the same act, expressly withholding from said railroad company the power to grant, sell, or convey the same; or, if said act is construed so as to pass the title to said submerged land, it was a title subject to be resumed by the state which gave it, and there was no consideration for said grant. And your informant insists that the same is withdrawn and revested in the state of Illinois by the repeal of the act of 1873; that the act of 1869 contained little, if anything, of legislation, except the grants above recited; that the object and intention of the legislature in passing said act of repeal was to undo what had been done by the act of 1869, to withdraw what had been given by that act, and revest in the state whatever title had been divested thereby."

The relief asked is that a decree be rendered, establishing and confirming the title of the state of Illinois to the bed of Lake Michigan, outside of the 200 feet right of way of the Illinois Central Railroad Company; that the claims of the railroad company thereto be declared to be unfounded, and that the clouds and doubts cast thereby upon the title of the state be removed; that the boundaries between the land of the United States and the city of Chicago and of the state be ascertained, and the shore line and navigable water determined; that the railroad company may be enjoined from filling the bed of the lake outside its right of way, from sinking or constructing piles therein, or in any manner encroaching upon the domain of the state, as the same is alleged in the information to exist, and that the rights of said railroad company under the various laws of the state be ascertained and declared; that the structures and erections, all fillings, piling, crib-work, and pier construction made by the railroad company, upon or in the said domain of the state, excepting within its said 200 feet right of way, be directed to be removed, and such domain be restored to the condition in which it was before such encroachments were made; that the state of Illinois may be declared

to have the sole exclusive right to develop the harbor of Chicago by the construction of docks and wharfs, and to dispose of such rights at its pleasure, for the interest of the public.

So much for the case as made by the information.   The answer of the railroad company avers that on the sixth day of July, 1870, it formally accepted the act of 1869, and all the provisions thereof, and caused due and proper notice thereof to be filed and made a matter of record in the office of the secretary of state for the state of Illinois; that it has ever since treated that act as binding and effectual for the accomplishment of the purposes therein expressed; that; relying upon its provisions, the company had, from time to time, entered upon and formally taken possession of, reclaimed, and reduced to profitable use considerable portions of the submerged lands referred to and described in said act and in the information, and in so doing had expended about $500,000,—the lands so reclaimed having been also otherwise improved by the company at great expense, and being now in use for necessary purposes of its business; that by the act of 1869 the state granted to the company the absolute title to the submerged lands lying east of its right of way, and constituting a part of the bed of Lake Michigan; that the grant was one *in præsenti,* taking effect immediately; that the said act vested in the company the real and actual title to the said submerged lands, and constituted a contract between the state and the people thereof on one side, and the railroad company on the other, and is still valid and binding on all the parties thereto.   The answer further shows that by the act of 1869 the fee of the lands required to be held by the company in perpetuity was declared to "form a part of the gross proceeds, receipts, and income of the said Illinois Central Railroad Company, upon which said company shall forever pay into the state treasury, semi-annually, 10 per centum, provided for in its charter, in accordance with the requirement of said charter."   The company in its answer further claims that it never assented to, ratified, or acquiesced in the repealing act of 1873, and consequently, it contends, that that act was unconstitutional and void as in violation as well of section 10, art. 1, of the federal constitution, which prohibits a state from passing any law impairing the obligation of contracts, as of that clause of the fourteenth amendment which provides that no state shall deprive any person of property without due process of law, or deny to any person within its jurisdiction the equal protection of the laws.

*Atty. Gen. McCartney* and *Williams & Thompson,* for the State of Illinois.

*F. H. Winston, Jr.,* for the City of Chicago.

*B. F. Ayer, Lyman Trumbull,* and *John N. Jewett,* for the Illinois Central Railroad Company.

HARLAN, Justice, after stating the facts, said:

I pass by all that was said in argument by counsel touching the property rights claimed by the respective parties. The single question for determination, and beyond which the court will not go, is whether the pleadings make a case which, under the act of congress, is removable to this court. The act of March 3, 1875, entitles either party to a case arising under the constitution and laws of the United States, to have it removed into the proper circuit court of the United States,—the application for removal being made within a prescribed time. The petition for removal was filed in due time, and it is only necessary to inquire whether the case is one arising under the constitution or laws of the United States.

An analysis of the pleadings will show (1) that the relief which the state seeks depends, in part, upon the construction, operation, and effect of Virginia's act of cession, and the acts of congress creating the territory and admitting the state of Illinois into the Union; (2) that, apart from the case as made by the information, the rights of both parties depend, mainly, upon the inquiry whether the act of the Illinois legislature passed in 1873—set out both in the information and the answer—is in violation of those clauses of the national constitution to which reference is made in the answer.

It seems to the court to be entirely clear that, according to the adjudications of the supreme court of the United States, this is a case arising under the constitution and laws of the United States. That it presents questions which may be determined without reference to the federal constitution or to the laws of congress, or that the federal questions upon which the decision of the cause mainly depends are raised, not by the state which instituted the suit, but by the defendant company, is not material. In *Railroad Co.* v. *Mississippi,* 102 U. S. 140, 141, it was ruled, in conformity with previous decisions of the same court, that the judicial power of the United States extends to suits by a state against an individual in which the latter demands nothing from the former, but only seeks the protection of the constitution and laws of the United States against the claim or demand of the state; "that a case in law or equity consists of the right of one party, as well as the other, and may properly be said to arise under the constitution or a law of the United States, whenever its correct decision depends on the construction of either;"

"that cases arising under the laws of the United States are such as grow out of the legislation of congress, whether they constitute the right or privilege, or claim or protection, or defense of the party, in whole or in part, by whom they are asserted;" and "that it is not sufficient to exclude the judicial power of the United States from a particular case, that it involves questions which do not at all depend on the constitution or laws of the United States; but when a question to which the judicial power of the Union is extended by the constitution forms an ingredient of the original cause, it is within the power of congress to give the circuit courts jurisdiction of the cause, although other questions of fact or of law may be involved in it." Do the property rights of which the railroad company is alleged to be in possession arise out of or depend upon the act of 1869? Did that act alone, or as supplemented by its alleged acceptance on the part of the railroad company, constitute a contract between the state and company within the meaning of the contract clause of the federal constitution? If so, did the repealing act of 1873 impair the obligation of that contract, or does it, within the meaning of the fourteenth amendment, deprive the company of property rights without due process of law? These questions plainly involve a construction of the federal constitution, and the determination of rights, privileges, and immunities which, it is claimed, are protected by its provisions. The rights of parties depend upon that determination. The case is, therefore, removable under the act of 1875, unless the presence of the city of Chicago as a co-defendant with the railroad company prevents such removal.

The city has appeared and filed its answer. It admits all the allegations of fact made in the information. It makes no issue with the state, nor does it dispute the right of the state to the relief asked. In effect, it concedes the claims of the state. Her answer then proceeds to set out the sections of the act of 1869 which require the railroad companies already referred to, to pay to her the sum of $800,-000. After averring that no such payment has ever been made, the city alleges that she has always insisted that the act of 1869 was repealed, but if the court should be of opinion that the state is bound by its provisions, then she claims the right to receive the money required by that act to be paid. Without determining whether the city is a proper party to the issues between the state and the railroad company, it is clear that there is in the suit a separable controversy, wholly between the state and the railroad company, which can be fully determined as between them without the presence of the city

as a party. *Barney* v. *Latham*, 103 U. S. 205. But, were this not so, it is clear that if the city is a proper party, her attitude is such that, under the rule laid down in the *Removal Cases*, 100 U. S. 457, she must, although a defendant, be regarded as on the side of the state in the latter's controversy with the railroad company. The parties being so arranged, the railroad company is the only defendant on the opposite side from the state, and the non-joinder of the city in the petition for removal did not deprive the company of the right under the statute to remove the cause.

It was stated on the argument that the United States attorney for this district would hereafter enter the appearance of the United States. But it is not contended that the right of removal can be affected by the fact that the government is made a defendant. It may be proper to say that I am unaware of any authority in any officer of the United States to enter the appearance of the government as a defendant in this cause. But upon that point I make no decision at this time.

For the reasons stated, the court is of the opinion that this cause is properly on its docket, and that the motion to remand must be denied. Counsel will see that the proper order is entered.

In view of the large interests to be affected by the final determination of this cause, and especially because a state is a party, I deemed it proper to confer with the circuit and district judges upon the question of jurisdiction; and I am authorized to say that they concur with me in holding that the suit is removable under the statute.

See *Cruikshank* v. *Fourth Nat. Bank, infra; Myers* v. *Union Pac. Ry. Co., ante,* 292; *State* v. *Chicago, B. & Q. R. Co., ante,* 706; *Ellis* v. *Norton, ante,* 4