WITHERS *v.* HOPKINS PLACE SAVINGS BANK *et al.*

TOPLIFF *v.* HOPKINS PLACE SAVINGS BANK *et al.*

1. If one result of the judgment prayed for in an equitable petition involving the title to realty would be to vest in the plaintiff a complete title thereto without making a payment to one of the defendants of the sum of $2,200, which payment the latter claimed was essential to plaintiff's acquisition of such title, it was a case involving more than two thousand dollars.
2. Where such a case was instituted in a State court, and the only controversy therein was between the plaintiff on one side, and a named defendant on the other, and they were citizens of different States, the case was removable to the Federal court, notwithstanding there was another defendant residing in the State where the action was brought, who had formerly been connected with the title to the property in controversy, but who had parted with all interest in the same before the action was brought.
3. Where a distress warrant issued by a justice of the peace was levied on land, and the defendant therein filed a "plea" which was subsequently dismissed by a judgment of the justice's court, and no exception thereto was taken, or where no direct defense of any kind was made against such warrant, there was not, in either instance, any such "case in court" as that an equitable petition to restrain the further progress of the distress warrant and praying for further and independent relief as to matters over which the magistrate's court had no jurisdiction, could be regarded as a mere ancillary proceeding. On the contrary, such petition should be treated as the beginning of a new, distinct and original action.
4. There was no error in adjudging that the present cases were lawfully removable to the circuit court of the United States.

Argued December 10, 1897. — Decided April 12, 1898.

Removal to U. S. court. Before Judge Lumpkin. Fulton county. June 26, 1897.

*Anderson, Felder & Davis,* for plaintiffs.

*King & Spalding,* for defendants.

LITTLE, J. The present cases, each involving a similar state of facts and consequently resting for determination upon like principles of law, were argued together in this court, and in dealing with them, for the sake of brevity and convenience, ref-

erence will be made only to the first named. The Atlanta
Land and Annuity Company, hereafter referred to as the
Annuity Company, owned fourteen building lots in the city of
Atlanta. On March 19, 1885, that company entered into a
contract with the Atlanta Land and Improvement Company,
hereafter referred to as the Improvement Company, whereby
the former leased to the latter for a period of ninety-nine years
the said several lots, and the Improvement Company agreed,
in consideration of said lease, to pay to the Annuity Company,
its successors and assigns, a yearly rental of one hundred and
ten dollars for each of said lots, each lot being severally liable
for this sum as rent. It was provided further, that if at any
time the rent of any lot should be sixty days in arrears, the
Annuity Company would have the right to re-enter and repos-
sess the lot for which default was made, until the rent, inter-
est, and expenses should be paid, or to distrain for such rent
at any time after it became due and remained unpaid. The
Annuity Company stipulated further, that at any time during
the continuance of the lease it would execute to the Improve-
ment Company, its successors and assigns, a new lease for a
similar period and on the same terms for any one of said lots
not forfeited for non-payment of rent; and that the Improve-
ment Company should also have the right to extinguish the
ground-rent upon each lot by tendering and paying to the
Annuity Company twenty-two hundred dollars, on which tender
the latter would execute to the former a good and sufficient
deed to the reversionary interest in fee simple. Subsequently
the Annuity Company assigned its rights under and interest in
this contract, and also conveyed the fee in the property in ques-
tion, to one Seeger, trustee, who in turn made a like assign-
ment and conveyance to one Rosenthal, and the latter assigned
such contract and conveyed title to the Hopkins Place Savings
Bank, of Baltimore, Md., hereafter referred to as the Bank.
Mrs. K. M. Withers, who claimed as purchaser under the Im-
provement Company, occupied a house which had been erected
on one of the lots by the Improvement Company, and failed to
pay the rent of such lot as stipulated in the original lease;
whereupon, on April 13, 1897, the Bank sued out a distress

warrant against her for this rent to which it claimed to be en-
titled as assignee of the contract between the Annuity Company
and the Improvement Company, and had such distress warrant
levied on the interest of Mrs. Withers in the lot occupied by her.
When the distress warrant was levied, she filed in the justice's
court a "plea" denying that she owed the plaintiff anything
as rent or otherwise. This plea was dismissed on May 14, 1897.

Mrs. Withers then brought her equitable petition against
the Hopkins Place Savings Bank, Paul A. Seeger, trustee, J. S.
Rosenthal, the Atlanta Land and Annuity Company, the At-
lanta Land and Improvement Company, and the sheriff of Ful-
ton county (in whose hands the distress warrant was lodged).
In such petition she alleged, that the defendant in error
was a corporation of the State of Maryland and had no office
or place of business in the State of Georgia; that the said Bank
claims to be the assignee of the reversion to the lot levied on
under the distress warrant; that such claim is based on the
facts that on March 19, 1885, the Annuity Company executed
a deed which purported to convey to the Improvement Com-
pany the fourteen lots heretofore referred to, for the term of
ninety-nine years, and the Improvement Company covenanted
to pay the rents of all of said lots and all taxes thereon; and
she set out the further stipulations contained in the original
lease as hereinbefore referred to. She further alleged, that
both the Annuity Company and the Improvement Company
were chartered by the superior court of Fulton County at the
same time, to wit May 2, 1884; that the incorporators of each
of said companies were the same individuals; that the alleged
purpose of the said companies was to trade in real estate,
ground-rents, etc., and she charges that they were formed for
an illegal purpose — that is, to create an estate in lands for-
bidden by law and contrary to public policy; that the officers
and directors of each company were the same individuals; that
the Bank claims to be the assignee of the Annuity Company
under conveyances from the latter Company to Seeger, trustee,
from Seeger to Rosenthal, and from the latter to the Bank;
that both the Annuity Company and the Improvement Com-
pany have long since ceased to transact business of any kind,

and have no place of business or corporate existence in this State; that Rosenthal, who is a citizen of Maryland, has been the only president which either of the companies have had, and that there is no officer of either of said companies in Georgia on whom service can be made. She further alleges, that she became the owner by purchase of one of said lots, to wit lot No. 1, for which she paid forty-three hundred and fifty dollars; that she holds under title from Mrs. Brockett, who purchased the lot from the Improvement Company. She shows that the lot cost the Annuity Company but two hundred and seventy-seven dollars and fifty cents, and that the house she occupies on said lot did not cost the Improvement Company more than three thousand dollars. She alleges that the reservation of ground-rent by the Annuity Company, which the Improvement Company attempted to preserve in its deed to Mrs. Brockett, is null and void, because it violates the rule against perpetuities and is contrary to public policy. She avers that the claim of the Bank for rent against her is a cloud upon her title. She denies that the interest of the Annuity Company has ever been legally transferred to Seeger, trustee; she alleges that the distress warrant is in the hands of the sheriff for sale of the property; and she prays that the Bank be enjoined from further proceeding with the distress warrant for rent; that the claim for ground-rent referred to in the lease from the Annuity Company to the Improvement Company be decreed to be a cloud upon her title, and that such claim and stipulation be canceled by proper decree. She prays that service may be made upon the Bank, Rosenthal, Seeger, trustee, the Annuity Company and the Improvement Company by publication, and that the officer (the sheriff of Fulton county) be enjoined from executing the distress warrant.

On presentation of this petition, a rule nisi was granted, calling on the defendants to show cause before the judge of the superior court on a given day why the injunction should not issue as prayed for, and the further progress of the distress warrant was temporarily restrained. Service of the rule nisi was made upon the attorney of the Bank and upon J. W. Nelms, sheriff of Fulton county. Without further action be-

ing had by the court on this petition and the rule nisi, the defendant in error, on the 25th day of June, 1897, tendered a petition and bond, framed and executed in terms of the statute, for the removal of said cause from the superior court of Fulton county, in which it was then pending, to the circuit court of the United States for the northern district of Georgia. This petition for removal was based upon the ground, that the controversy in such suit was between citizens of different States, and that the matter and amount in dispute exceeded, exclusive of costs, the sum or value of two thousand dollars; and also upon the further ground, that there was a separable controversy between the plaintiff and the Bank which filed the petition for removal. On the 26th of June, 1897, by proper order, the judge of the superior court accepted the petition and approved the bond, and decided and adjudged that said cause should be removed; to which decision and judgment the plaintiff in error excepted and assigns error thereon; and the question we are now to determine is, whether the action instituted by the plaintiff in error in the court below, to enjoin the enforcement of the distress warrant and for other relief as prayed therein, could lawfully be removed to the circuit court of the United States under the petition filed by the Bank for that purpose.

The petition for removal was filed under the provisions of the act of Congress of March 3, 1875 (18 United States Statutes at Large, part 3, p. 470), as amended by the act of Congress of March 3, 1887 (United States Statutes at Large, 1886–90, p. 552), which as amended, so far as necessary here to be set out, provides, in substance, that any suit of a civil nature, at law or in equity, now pending or hereafter brought in any State court, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, in which there shall be a controversy between citizens of different States, may be removed by the defendant or defendants therein to the circuit court of the United States for the proper district. And further, that "when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different States and which can be fully deter-

mined as between them, then either one or more of the defendants actually interested in such controversy may remove said suit into the circuit court of the United States for the proper district." Under the view which we take of the case, we do not find it necessary to determine whether or not there was a separable controversy as between the plaintiff and the defendant Bank which brought the petition for removal. The points involved, and with which we propose to deal in determining whether the court below erred in ordering the case removed to the United States circuit court, are: (1) Whether the matter in dispute in the suit sought to be removed exceeded, exclusive of interest and costs, the sum or value of $2,000. (2) Whether the action was wholly between the plaintiff on the one side, a citizen of Georgia, and the Bank on the other, a citizen of Maryland; or whether the other defendants named, being citizens of Georgia, were such parties to the case as would defeat the right of removal. (3) Whether the action sought to be removed was merely ancillary, and therefore not removable. These points will be treated in their order.

1. Under the provisions of the act of Congress above referred to, in order to entitle the defendant to a removal of the cause from the State to the Federal court, on the ground of diverse citizenship, it must affirmatively appear that the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars. Under the act, the action is not removable unless the subject-matter of the controversy is money or some right or property estimable in money. Pratt *v.* Fitzhugh, 1 Black. (U. S.) 271; it must be such as is capable of being reduced to a pecuniary measure. Erwin *v.* Walsh, 27 Fed. R. 579. And it is not sufficient if the amount in controversy, exclusive of interest and costs, exactly equals the sum of two thousand dollars; the suit can not be removed unless it exceeds that amount. Walker *v.* U. S., 4 Wall. 163; Lazensky *v.* Supreme Lodge, 32 Fed. R. 417. This jurisdictional fact may be made to appear either from the pleadings or the petition for removal. Pittsburg etc. R. Co. *v.* Ramsey, 22 Wall. (U. S.) 322; Keith *v.* Levi, 2 Fed. R. 743; Langdon *v.* Hillside Coal etc. Co., 41 Fed. R. 609; Chambers *v.* McDougal, 42

Fed. R. 694; Reed v. Hardeman Co., 77 Tex. 165. In the case of Lee v. Watson, 1 Wall. 339, the Supreme Court of the United States define the words "matter in dispute," as used in the statute, to mean "the subject of litigation; the matter for which the suit is brought, and upon which issue is joined, and in relation to which jurors are called and witnesses examined." In cases where jurisdiction is sought on the ground of the amount in controversy, in order to ascertain the value of the matter in dispute, resort must be had to the character of the action. Simon v. House, 46 Fed. R. 317. Generally, where the action is for the recovery of specific property, or concerns the title thereto, the property involved is the matter in dispute, and its value is the measure of the amount in controversy. On the other hand, if the suit is brought for the enforcement of a lien, charge or encumbrance on property, the amount of such lien or charge is the test of jurisdiction, and not the value of the property. Black's Dillon on Removal of Causes, § 51. In an action upon a money demand, where the general issue is pleaded, the matter in dispute is the debt claimed. Lee v. Watson, supra; Schacker v. Insurance Co., 93 U. S. 241; Gray v. Blanchard, 97 U. S. 565. The damage claimed in suits sounding in damages gives the jurisdiction. Barry v. Edmunds, 116 U. S. 550; Smith v. Greenhow, 109 U. S. 669; Dwyer v. Bassett, 63 Tex. 276. In ejectment suits, the value of the interest or estate claimed determines the jurisdiction. Crawford v. Burnham, 1 Flip. 117; Lanning v. Dolph, 4 Wash. C. C. 624; Green v. Liter, 8 Cranch, 242; Railway Company v. Smith, 135 U. S. 195; Grant v. McKee, 1 Pet. 248. So in an action to set aside a tax sale of land and cancel the deed given thereunder, or to quiet title to real property, or to set aside a conveyance as fraudulent and a cloud upon plaintiff's title, the matter in dispute is the land or estate affected, and its value determines the question of jurisdiction, so far as it depends on the amount involved. Berthold v. Hoskins, 38 Fed. R. 772; Lehigh Zinc & Iron Co. v. New Jersey Zinc & Iron Co. 43 Fed. R. 545; Simon v. House, 46 Fed. R. 317, and authorities cited in the last case.

In the present action the plaintiff, after alleging, among

other things, that the title to the property was in her, prayed
that the Bank be permanently enjoined from prosecuting the
suit on the distress warrant, and from setting up the claim for
ground-rent in any action, and from selling or transferring
said claim; that said claim, and the stipulation therefor as con-
tained in the lease of the Annuity Company to the Improve-
ment Company, be declared a cloud upon plaintiff's title, and
be canceled and removed by a proper decree. It is also shown
by the petition filed by the plaintiff, that by the terms of the
contract under which the Bank claims as assignee, the ground-
rent, the stipulation for which the plaintiff seeks to have can-
celed, could only be extinguished by the payment of $2,200
to the Bank as assignee of this contract. Thus the plaintiff
seeks a decree vesting in her a complete title to the lot, with-
out making payment to the Bank of the sum above indicated,
while the Bank claims that such payment is essential to plain-
tiff's acquisition of the title. It is true that the plaintiff al-
leges that the lots are now worth much less than $2,200, and
have never been worth so much; but in the petition for re-
moval it is alleged that the matter and amount in dispute ex-
ceeds, exclusive of costs, the sum or value of two thousand dol-
lars. Whether or not, therefore, the lot, the title to which the
plaintiff claims to be vested in her, and concerning which she
seeks to have the stipulation for ground-rent canceled as a
cloud upon her alleged title, does or does not exceed in value,
exclusive of interest and costs, the sum of two thousand dol-
lars, is a question of fact which can be raised and determined
in the Federal court only, on a motion to remand; the State
Court not being authorized in such cases to hear evidence on
questions of fact. Black's Dillon on Removal of Causes, § 50,
and authorities cited.

2. Under the provisions of the statute for the removal of
causes from the courts of the State to the circuit court of the
United States, the defendant is not entitled to have the cause
removed on the ground of diverse citizenship, unless it shall
appear that all the parties on the one side are citizens of dif-
ferent States from the State or States of which all the parties
on the other side of the controversy are citizens. In the pres-

ent case, the plaintiff brought her petition against the Hopkins Place Savings Bank, Paul ·A. Seeger, trustee, and J. S. Rosenthal, all of whom were alleged to be non-residents of Georgia; also against the Atlanta Land and Annuity Company and the Atlanta Land and Improvement Company, which were alleged to have been chartered by the superior court of Fulton county, Georgia, but neither of which it was alleged had any office or place of business or corporate existence in the county of Fulton, or elsewhere in the State of Georgia; and also against the constable ( who first received the distress warrant, and having levied it on land, delivered it over to the sheriff as prescribed by law) and the sheriff in whose hands the distress warrant had been placed, and who it was alleged were proceeding with the enforcement of such warrant. As to the non-resident defendants and also the Annuity Company ·and Improvement Company, the plaintiff prayed that they be served by publication.

By sections 4975 et seq. of the Civil Code, the right and method of serving non-resident defendants in equitable proceedings by publication is given and prescribed. And by section 1902 of the Civil Code it is provided that in all cases where any corporation shall have no public place for doing business, or shall have no individual in office upon whom service of writs of process may be perfected, within the knowledge of any party, the plaintiff may, upon complying with the conditions therein prescribed, cause such corporation to be served by publication. It will be noted that the Annuity and Improvement Companies against which process and service by publication was prayed in this case, acquired their corporate existence under the laws of Georgia. They were therefore, within the meaning of the statute for the removal of causes, citizens of the State of Georgia. If we assume that, notwithstanding the plaintiff's allegation that these companies had no corporate existence in this State, and necessarily therefore none elsewhere, they could be made parties, it would follow that being for the purposes of this suit citizens of Georgia, if they were necessary parties to the controversy, the right of removal on the ground of diverse citizenship must be denied, because if either was a necessary

party defendant to a full adjudication of the rights of the plaintiff, the cause would not then be one in which all the parties on the one side were citizens of different States from the State or States of which all the parties on the other side were citizens. Among the parties who are joined, all those whose presence is necessary to the determination of the controversy must possess the required citizenship. If any one of the plaintiffs is a citizen of the same State with any one of the defendants, the case will not be removable. Black's Dillon on Removal of Causes, § 84, and authorities cited. It is only those parties necessary to a determination of the cause, whose citizenship will be considered on the question of removal. Persons joined, if not necessary, even though they be proper parties, will not defeat the right of removal. Barney *v.* Latham, 103 U. S. 205. In Black's Dillon on Removal of Causes, § 85, it is said :] "It is a well-settled rule, that the presence on the record of merely nominal or formal parties can neither give nor defeat the right of removal ; that is to say, when the question of removability of the cause depends upon the citizenship of the parties, it is only the real and substantial parties in interest whose citizenship need be considered ; that of merely formal parties, whose presence is not necessary to the determination of the real controversy, may be disregarded. If the real defendant in the case is a citizen of a different State from the plaintiff and a non-resident, he may remove the case, although there is joined with him as defendant one against whom no substantial relief is asked or obtainable, and who has no joint interest, duty or obligation with the real defendant, whatever his citizenship may be." The court will dispense with the joinder of all parties whose citizenship, if they were made parties to the suit, would oust the jurisdiction of the court, whenever, without prejudice to their rights, it can proceed to decide the merits of the case as between the other parties properly before it. Harrison *v.* Urann, 1 Story, 64, Fed. Cas. No. 6,146.

In the present case, it appears that the Annuity Company had parted with all right and title in and to the property involved in the controversy, and it does not appear that its in-

terest could be in any manner affected by any decree which might be rendered. It was therefore an unnecessary party, and its citizenship should not be considered on the question of removal. Yardly v. Huntington, 121 U. S. 179. Nor is the Improvement Company a necessary party. Under its contract with the Annuity Company, which the latter assigned to the Bank, it is liable to the Bank for the payment of the ground-rent, and, so far as the record discloses, this liability exists notwithstanding the Improvement Company has assigned to the plaintiff the entire interest to the particular lot acquired by it under the contract with the Annuity Company; and if a decree should be rendered in favor of the plaintiff, it would afford to the defendant Bank no right as against the Improvement Company which the Bank did not have previously to the bringing of the action, nor would such decree deprive the Improvement Company of any right which it might have against the plaintiff previously to the rendition thereof. The plaintiff prays no relief whatever against the Improvement Company, but simply asks that the stipulation for ground-rent be canceled as between her and the defendant Bank; and while the Improvement Company might, by the rendition of a decree in favor of the defendant Bank, be incidentally benefited, it is not an indispensable party to the cause, and therefore its citizenship will not defeat the right of removal.

3. In her petition the plaintiff prayed, among other things, that the bank and its agents and attorneys be temporarily restrained and permanently enjoined from prosecuting the suit on the distress warrant, and that the constable and sheriff be restrained and enjoined from executing the warrant. Upon the prayer of this petition a restraining order was granted; and the plaintiff in error now contends that the court erred in ordering the cause removed, for the reason, as she insists, that the petition filed by her is nothing more than a mere suit ancillary or auxiliary to the distress-warrant proceeding. While the rule is well established, that a suit or proceeding which is merely ancillary or auxiliary to an original action, or a mere graft upon it or dependence of it, as distinguished from independent and separate litigations, is not removable to the

Federal court (Black's Dillon on Removal of Causes, § 32, and authorities cited), yet the position taken by the defendant, that her suit falls within that class, is not tenable. The issuance of the distress warrant in the first instance was a mere ministerial act. *Thornton* v. *Wilson, 55 Ga.* 607. By section 4819 of the Civil Code it is provided, that "the party distrained may in all cases replevy the property so distrained, by making oath that the sum, or some part thereof, distrained for is not due, and give security for the eventual condemnation-money; and in such case the levying officer shall return the same to the court having cognizance thereof, which shall be tried by a jury as provided for in the trial of claims," etc. Until the enforcement of the distress warrant is arrested in the manner above indicated, it is final process; and after levy, it is more in the nature of a suit terminated than of a suit pending. Until such affidavit is made, the court has no jurisdiction or cognizance of it; and when so made, it has jurisdiction only for the trial by jury of the issue between the parties made by the two affidavits as to the amount of rent actually due. *Sturgis & Berry* v. *Frost, 56 Ga.* 188; *Smith* v. *Green & Postell, 34 Ga.* 178. Although it is alleged in the petition that the plaintiff filed a plea in the justice's court, if we assume that the plaintiff really made the oath and complied with the other conditions necessary under the statute to arrest the progress of the distress warrant and require the officer to return the same to the court for the purpose of trying the issues thus made, it appears that this "plea" or affidavit, as the case may be, was dismissed by a judgment of the justice's court, that no exception was taken thereto, and that no direct defense of any kind was left pending in the justice's court to the enforcement of the warrant. This being true, the justice's court lost further jurisdiction of the proceeding, and the warrant at once became again operative as final process. *Girtman* v. *Stanford, 68 Ga.* 178; *Griggs* v. *Willbanks, 96 Ga.* 744. There was therefore no case pending in the justice's court, upon which the present equitable petition to restrain the further progress of the distress warrant, and praying for further and independent relief as to matters over which the magistrate's court had no jurisdiction,

could be predicated as a mere ancillary proceeding. On the contrary such petition should be treated as the beginning of a new, distinct, and original action.

4. It follows from the above rulings, that the court below committed no error in adjudging that the present cases were lawfully removable to the circuit court of the United States; and consequently the judgment in each case is

*Affirmed. All the Justices concurring, except Cobb, J., absent.*