## In re DELAFIELD.

## In re CITY OF PITTSBURG.

### (Circuit Court, W. D. Pennsylvania.   June 15, 1901.)

**1. JURISDICTION OF FEDERAL COURTS — PROCEEDINGS UNDER EMINENT DOMAIN STATUTE OF STATE.**

A proceeding under a state statute to determine the compensation of a landowner for property taken for a public use under the power of eminent domain is a suit of a civil nature, within the meaning of the federal judiciary act of 1887–88, of which a federal court has jurisdiction, and may be instituted in such court by a landowner, where the requisite conditions exist as to citizenship and the amount involved, notwithstanding a provision of the statute requiring such proceedings to be brought in a particular court of the state.   The right of a citizen of another state to invoke the jurisdiction of the federal courts for the protection of his rights extends to the enforcement therein of such remedies as are given by the local laws of the state in its own courts.

**2. EMINENT DOMAIN—EFFECT OF CONDEMNATION ORDINANCE—PROCEEDINGS BY LANDOWNER.**

The passage of an ordinance by a city authorized by statute to condemn land for public purposes, stating its election to appropriate certain property, amounts to a present taking of such property, and entitles the landowner to institute proceedings to recover compensation therefor; and the city cannot delay or defeat such proceedings by failing to file the bond required by the statute as a condition precedent to its taking possession or instituting proceedings on its own part to have the damages assessed.

Petition by Mary C. Delafield for the appointment of viewers to assess the damages of petitioner by reason of the appropriation of her lands for public use by the city of Pittsburg.   On motion by the city to dismiss the petition.

Chantler, McGill & Cunningham, for Mary C. Delafield.

James C. Gray, for city of Pittsburgh.

ACHESON, Circuit Judge.   The petition of Mary C. Delafield sets forth that she is a citizen of the state of New York; that under and by authority of the act of assembly of the commonwealth of Pennsylvania, approved the 25th day of May, 1887 (P. L. 267), the city of Pittsburg, a municipal corporation, and citizen of the state of Pennsylvania, located in the Western district thereof, by its duly constituted authorities passed an ordinance approved the first day of May, 1901, for the condemnation and taking of two pieces of land, particularly described in the ordinance, belonging to the petitioner, situate in the township of O'Hara, Allegheny county, and within the Western district of Pennsylvania, and has condemned, taken, and appropriated the same for the purpose of a filtration plant, and of improving the water supply of said city; that no settlement of the damages for the taking has been made with her, and no compensation has been paid to her; and that the matter in dispute between the city and the petitioner exceeds the sum of $2,000, exclusive of interest and costs,—the value of the lands so

taken largely exceeding the sum of $100,000. The petition concludes thus:

"Under and in pursuance of said act of assembly and of the laws and constitution of the United States, your petitioner presents this, her petition, and prays your honorable court to appoint five disinterested freeholders of said Allegheny county, to serve as viewers to assess the damages proper to be paid to your petitioner for the property appropriated, and to fix a time for the meeting of said viewers."

The city of Pittsburg has moved the court to dismiss the petition, and in support of the motion assigns the following reasons:

"First. The proceeding sought to be instituted is a statutory one, under the authority of the act of assembly of the state of Pennsylvania, approved May 25, 1887, which provides that the petition for the appointment of viewers to assess the damages to be paid to the owners for the property or rights appropriated shall be presented to the court of common pleas of the county in which the land is situated, and your honorable court has therefore no jurisdiction in the premises.

"Second. The act of assembly approved May 25, 1887, under which this proceeding is sought to be brought, requires that a bond be filed in the court of common pleas of the county in which the land is situated before a petition can be presented for the appointment of viewers; and no bond having been filed covering the property described in the petition, your honorable court has no jurisdiction."

The act of congress of March 3, 1887, as amended by the act of August 13, 1888, provides that "the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2,000," in which there shall be a controversy between citizens of different states. In Weston v. City Council, 2 Pet. 449, 464, 7 L. Ed. 481, 486, Chief Justice Marshall, discussing the scope of the term "suit," said:

"The term is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice by which an individual pursues that remedy which the law affords him. The modes of proceeding may be various, but, if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought is a suit."

Hence in Kohl v. U. S., 91 U. S. 367, 375, 23 L. Ed. 449, it was held that a proceeding by the United States to take land for public uses by condemnation was a suit at law, of which a circuit court of the United States had jurisdiction, under the judiciary act of 1789. In Gaines v. Fuentes, 92 U. S. 10, 20, 23 L. Ed. 524, it was held that a controversy between citizens of different states, in the sense of the statute, is involved whenever any property or claim capable of pecuniary estimation is the subject of litigation, and presented by the pleadings for judicial determination. Here the petitioner is seeking compensation for the land taken from her. Her right to compensation does not depend upon the state statute. In lieu of the ancient remedy by action of trespass, the legislature has created a new form of procedure, but the statutory proceeding is nevertheless a suit of a civil nature. Now the law of a state limiting the remedies of its citizens in its own courts cannot be applied to prevent the citizens of other states from suing in the courts

of the United States in that state for the recovery of any property or money there to which they may be entitled. Bank v. Jolly's Adm'rs, 18 How. 503, 15 L. Ed. 472; Cowles v. Mercer Co., 7 Wall. 118, 19 L. Ed. 86. Parties entitled to sue in the courts of the United States are in general entitled to pursue in such courts all the remedies for the vindication of their rights which the local laws of the state authorize to be pursued in its own courts. Ex parte Biddle, 2 Mason, 472, Fed. Cas. No. 1,391. In Searl v. School Dist. No. 2, 124 U. S. 197, 199, 8 Sup. Ct. 460, 461, 31 L. Ed. 415, 416, it was held that a proceeding authorized by the statutes of Colorado for condemning land for public use for school purposes is a suit at law, within the meaning of the constitution of the United States and the acts of congress conferring jurisdiction upon the courts of the United States, which may be removed into the circuit court of the United States from a state court immediately after the filing of the petition, and before the appointment of the commissioners to estimate the damages. There the court said:

"The fact that the Colorado statute provides for the ascertainment of damages by a commission of three freeholders, unless at the hearing a defendant shall demand a jury, does not make the proceeding from its commencement any less a suit at law, within the meaning of the constitution and acts of congress and the previous decisions of this court. The appointment of the commissioners is not, as in the case of Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206, and the Pacific Railroad Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319, a step taken by the party seeking to make the appropriation ex parte, and antecedent to the actual commencement of the adversary proceeding inter partes, which constitutes a suit in which the controversy takes on the form of a judicial proceeding, because, under the Colorado law, the appointment of the commissioners is a step in the suit, after the filing of the petition and the service of summons upon the defendant. It is an adversary judicial proceeding from the beginning. The appointment of commissioners to ascertain the compensation is only one of the modes by which it is to be determined. The proceeding is, therefore, a suit at law from the time of the filing of the petition and the service of process upon the defendant."

So, under the Pennsylvania act of 1887, the proceeding in court is an adversary judicial proceeding from the beginning. It is certain that if the city had filed in the state court a petition under the act of 1887 for the ascertainment of the compensation to be paid Mary C. Delafield, the cause would have been immediately removable to the circuit court of the United States by the landowner. Is there, then, any good reason why she might not institute the proceeding in the first instance in this court? I think not. This conclusion accords with the view expressed in 2 Lewis, Em. Dom. § 315, where it is said:

"It may be regarded as settled that a condemnation proceeding pending in the state courts, whether by appeal from commissioners or otherwise, may be removed to the federal court of the proper district when a proper case is made out. From these cases it would seem to follow that such proceedings, when instituted in a court in the first instance, may be brought in the federal court, provided the requisite conditions as to citizenship and value exist."

The ordinance here declares and enacts that "the said city does hereby elect and resolve to take, use, and appropriate the said real

estate and land for the purposes aforesaid." In terms, it is a present appropriation under the statute of 1887. It is true that act requires the city to file its bond conditioned for the payment to the landowner of the damages for the taking of the property, when the same shall be ascertained according to law, and "upon the approval of the bond, and its being filed, the right of the corporation to enter upon the property or rights intended to be appropriated shall be complete." The duty to file the bond rests upon the city. It is for the benefit of the landowner, who may waive the filing. The language of the act—"upon petition of either the property owner, or the city, or borough, at any time thereafter," the court shall appoint viewers—no doubt requires the city to file its bond before proceeding by petition. The landowner, however, stands in a very different position, and is at liberty to move without awaiting the filing by the city of its bond. It would be singular, indeed, if the city could set up its own omission to defeat the landowner's petition. How long is the landowner thus to be delayed? To all intents and purposes, the ordinance amounts to an actual appropriation. It deprives the proprietor of his beneficial ownership. It was expressly ruled by the court of common pleas No. 2 of Allegheny county, in the case of Shields v. City of Pittsburg (April 17, 1901) 48 Pittsb. Leg. J. 327, that the passage of a condemnation ordinance was itself a taking of the land, and that thereby the title became vested in the city. I am of opinion that the motion of the city to dismiss this petition must be overruled; and it is so ordered.