DEEPWATER RY. CO. v. WESTERN POCAHONTAS COAL & LUM-
BER CO. et al.

(Circuit Court, S. D. West Virginia. April 9, 1907.)

**1. REMOVAL OF CAUSES—SEPARABLE CONTROVERSY—CONDEMNATION PROCEED-
INGS.**

In a proceeding in a state court by a railroad company to condemn right
of way, in which the owners of different parcels of land are joined as per-
mitted by Code W. Va. 1899, c. 42, § 4 [Code 1906, § 1364], which provides
that such owners may be joined or proceeded against separately, there is a
separable controversy between the petitioner and the owner or owners of
each tract, and, where all those defendants owning or having any interest
in certain tracts are citizens of other states, and have no interest in any
other tract, they may remove the cause as to them into the federal court,
where the amount in controversy is sufficient.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes,
§ 103.

Separable controversy, see note to 18 C. C. A. 86; 35 C. C. A. 155.]

**2. ACTION—PROCEEDINGS CONSTITUTING COMMENCEMENT—CONDEMNATION PRO-
CEEDINGS.**

Under Code W. Va. 1906, §§ 1363, 1366, which prescribe the procedure
for condemnation of real estate for public use by the making of an ap-
plication to the circuit court for the appointment of commissioners to
ascertain a just compensation to be made to the owners and require 10
days' notice of such application to be given to such owners, which notice
"may be given either before the application is presented or afterwards,"
the date of the institution of such a suit or proceeding is that of the
presentation in court of the application, and not the date notice is served.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Action, §§ 725–734.]

**3. REMOVAL OF CAUSES—PERSONS ENTITLED TO REMOVE—EMINENT DOMAIN—
CONDEMNATION PROCEEDINGS—PARTIES.**

A corporation which had conveyed the legal title to certain lands to trus-
tees by a mortgage which had been foreclosed and an order of sale en-
tered, and which after such decree sold its equity of redemption to an-
other, had no interest in the lands after such sale which made it a nec-
essary party to proceedings for the condemnation of a right of way over
such lands, even though a formal conveyance to the purchaser had not
been executed at the time the proceedings were instituted, and a con-
veyance subsequently executed did not make the grantee a purchaser pen-
dente lite and without standing to remove the cause.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes,
§ 113.]

**4. SAME—SEPARATE CONTROVERSIES—REMOVAL OF SINGLE CONTROVERSY.**

There is a clear distinction between controversies which are merely
"separable," within the meaning of the removal statute, and those which
are wholly separate and distinct, and only joined in one suit by express
statutory permission, as in case of proceedings for condemnation of a
railroad right of way in which as permitted by statute owners of different
tracts of land are joined in the same proceeding, and in such a case a re-
moval of the cause by the owner or owners of one tract does not carry
with it the proceedings as against other owners.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Caus-
es, § 110.]

On Motion to Remand to State Court.

Brown, Jackson & Knight and A. N. Campbell, for plaintiff.

J. Lewis Bumgardner, Simms & Enslow, and J. W. McCreery, for
defendants.

DAYTON, District Judge (sitting specially). The Deepwater Railway Company, a corporation, on the 9th day of October, 1905, lodged with the clerk of the circuit court of Raleigh county, W. Va., its petition against numerous parties, among others the Western Pocahontas Coal & Lumber Company, a West Virginia corporation, J. C. Maben, and Charles Catlett (successor of Richard P. Bell, deceased), trustees, and James Knox Cain, seeking for public railroad uses to condemn various parcels of land, among others three parcels of 23.47, 2.59, and 2.8 acres, respectively, legal title to which it alleges is vested in the Western Pocahontas Coal & Lumber Company, subject to a mortgage executed by it to J. C. Maben and Richard P. Bell (who had died and been succeeded by Charles Catlett), trustees, nonresidents.

Notices that application would be made on December 11, 1905, to said circuit court of Raleigh county to appoint commissioners to assess damages and to condemn the various parcels of land proposed to be taken by the plaintiff corporation, and used in the construction of a branch line less than 50 miles long, from Slab Fork of Guyandotte river up Winding Fork, and down Soak creek, to Piney river, were given by the plaintiff and served at different times on the various parties, those on the Western Pocahontas Coal & Lumber Company on October 12, 1905, on James Knox Cain, in Philadelphia, on October 9, 1905, and again on October 20, 1905, and upon the nonresident parties, including Maben and Catlett, by publication commencing October 12, 1905, and running four weeks as required by statute. On the 11th day of December, 1905, in the circuit court of Raleigh county, the plaintiff by leave of the court filed its notices and docketed its proceeding, and thereupon Maben and Catlett, James Knox Cain, and the Western Pocahontas corporation, incorporated under the laws of Virginia, tendered a joint petition to "remove" to this court, which petition, upon objection made, was not allowed to be filed because the Western Pocahontas corporation was not a party, thereupon the latter filed its petition, setting up title to said three parcels of land, and was admitted as a party defendant. Then the said Maben and Catlett, trustees, James Knox Cain and the Western Pocahontas corporation, again tendered their petition to "remove" the cause to this court, tendering bond admitted to be sufficient, but the said court refused the prayer thereof and exception was duly taken. On the 3d day of April, 1906, the said defendants filed in this court a certified record, and the cause was ordered to be docketed. The plaintiff thereupon moved to remand the cause, and it is this motion I am now to determine.

In their petition to remove the said defendants allege that their interests in dispute exceed in value $2,000, that they are all nonresidents of West Virginia, Maben being a citizen of Alabama, Catlett of Virginia, Cain of Pennsylvania, and the Western Pocahontas corporation a Virginia one; that they have no title to or interest in any other of the lands sought to be condemned other than the said three parcels; that a separable controversy exists between them and the plaintiff as to these three, and that the facts as to the title of these three parcels were that the legal title was in Maben and Catlett (suc-

cessor of Bell, deceased), trustees in a mortgage executed by the Western Pocahontas Coal & Lumber Company; that James Knox Cain was the owner by purchase of the equity of redemption of the said Western Pocahontas Coal & Lumber Company, and so on the day plaintiff's petition to condemn was filed and notice thereof given to them the Western Pocahontas Coal & Lumber Company had no title nor interest whatever in said three parcels of land, but they were wholly owned at that time by Maben and Catlett, trustees, and James Knox Cain; that afterwards, on October 16, 1905, the whole tract of which the three parcels were part was sold under decree entered July 21, 1905, of the circuit court of Raleigh county, by a special commissioner appointed in a chancery proceeding of J. C. Maben et al. v. Western Pocahontas Coal & Lumber Company et al., at which sale the Western Pocahontas corporation became the purchaser of the whole tract, including the three parcels, which sale, by decree, was confirmed on November 1, 1905, and from that time became the sole property of the Virginia corporation, the Western Pocahontas corporation; that no notice to condemn was served upon it until October 27, 1905.

The jurisdiction of federal courts to try and determine controversies touching the condemnation of land, either by original proceeding or upon removal from state court, is now so well settled as to admit of no further argument. Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; Kirby v. C. & N. W. R. Co. (C. C.) 106 Fed. 551; Terre Haute v. E. & T. H. R. Co. (C. C.) 106 Fed. 545; U. T. Ry. Co. v. C. B. & Q. R. Co. (C. C.) 119 Fed. 209; In re Delafield (C. C.) 109 Fed. 577. Nor under the law and facts in this case can there be any question of there being a separable controversy between the plaintiff and those claiming these three distinct parcels sought to be condemned such as to authorize removal, if the necessary amount involved is large enough and the required diversity of citizenship exists. The fact that numerous other resident parties interested in other parcels sought to be taken are joined is immaterial. The West Virginia statute (section 4, c. 42, Code 1906) expressly provides that in such proceeding owners of different parcels may be joined in one proceeding, or be proceeded against in separate ones. The claimants of the three parcels here had and have no interest whatever in the other ones sought to be taken. The authorities are clear that such condition of facts presents a separable controversy or, speaking accurately, a distinct and separate controversy. Pacific Ry. Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319; Sugar Creek P. B. & P. R. Co. v. McKell (C. C.) 75 Fed. 34; N. Y., N. H. & H. R. R. Co. v. Cockcroft (C. C.) 46 Fed. 881; Chicago v. Hutchinson (C. C.) 15 Fed. 129. The controversy, therefore, narrows itself down to the question of whether at the time of the institution of the suit or proceeding the Western Pocahontas Coal & Lumber Company, the West Virginia corporation, had such title or interest in the lands sought to be condemned as to make it a necessary party, and thereby destroy the diversity of citizenship required for removal to this court.

On behalf of the plaintiff, it is insisted that this suit was "instituted" on October 9, 1905, when it lodged in the clerk's office of

Raleigh county its petition and served its first notice on parties of its purpose to apply to the court on December 11th following for the appointment of commissioners; that at this time the title to the parcels sought to be taken was in the West Virginia corporation, the Western Pocahontas Coal & Lumber Company, subject to the mortgage to Maben and Catlett, trustees; and that, jurisdiction being absent at the institution of the suit, the subsequent conveyances, pendente lite to Cain and the Virginia corporation, the Western Pocahontas corporation, cannot supply it. On the other hand, it is insisted that the suit was not "instituted" until December 11th, when the plaintiff's notices, petition, exhibits, etc., were filed and the cause by order duly docketed in court and by its order, and, further, that the West Virginia corporation did not have even on October 9th, when the first notice was served, any title or interest in the lands that then required it to be notified or made party. In short, two questions must be answered. First. When is a condemnation proceeding in legal sense instituted? Second. What interest on October 9th did the West Virginia corporation have in these three parcels sought to be taken? Considering the first proposition, it is never to be forgotten that in West Virginia the common-law practice prevails unless expressly modified by statute, and that at common law the beginning of a suit is the issuance of the original writ or summons from the clerk's office signed by the clerk. Va. Fire & Marine Ins. Co. v. Vaughan, 88 Va. 832, 14 S. E. 754. It is further to be noted that no declaration or pleading in ordinary actions can be filed in the clerk's office save and except upon legally constituted rule days. While our statutes have provided certain exceptional actions may be brought other than by issuance of this original writ, yet in every instance, I think, the statute itself fully sets out the practice to be observed in such case. For example, ejectment may be instituted by service of the declaration with a notice appended that it will be filed upon some specified rule day in the clerk's office or upon a day named in court. Upon the filing of such declaration a rule issues to require defendant to plead at the next rule day or within the time fixed by the court. Again, under Code W. Va. c. 121, § 6 [Code W. Va. 1906, § 3786], provision is made for the recovery of money due on contract by notice and motion, but it is expressly provided that such notice shall be given for 30 days and returned to the clerk's office 20 days before the day fixed for such motion. And it has been expressly held that, while judgment in a suit regularly matured at rules and on the docket relates back to the first day of the term of court when taken, such is not the case of a judgment taken upon such notice. Nat. Bank v. Distilling Co., 41 W. Va. 530–533, 23 S. E. 792, 56 Am. St. Rep. 878.

In the case of condemnation proceedings, the statute of this state (Code, c. 42, § 3; Code 1906, § 1363) provides:

"In any case in which real estate may be lawfully taken for a purpose of public utility, application may be made to the circuit court of the county in which the estate is situated, to appoint commissioners to ascertain a just compensation to the owners of the estate proposed to be taken. * * * And when the judge of the court to which the application is made is so situated as

to render it improper for him to act thereon, and no judge to act in the case can be agreed on by the parties, and it be found for any reason impracticable to elect a judge to act in the case, * * * the application may be withdrawn," etc.

And section 6 of the same chapter (section 1366, Code 1906) provides:

"Of such application ten days' notice shall be served on the said owners, claimants and persons holding liens, and the notice may be given either before the application is presented or afterwards."

From these provisions it would seem to me that this proceeding must be regarded as a summary one provided by the statute, dependent solely and alone upon the presentation of the application to the court in session. It requires it to be addressed to the judge of the court, to have his personal consideration and action, and explicitly provides, in case of his disqualification, how it may be withdrawn and presented to another court in an adjoining circuit where it may receive such personal consideration and action on the part of the judge thereof. The giving of the notice seems to me to be made entirely subordinate to the application, as it may be given either before or after the making of the application. This being true, I am of opinion the date of the institution of such suit must be that of the presentation in court of the application, and not the date notice is served. The notice may be given and no application made, in which case the record of the court will not disclose that any suit was ever brought. If notice, which is only required to be given 10 days prior, can in fact be given two months prior, and thereby by this act, to an extent at least, the owner's right to sell and dispose of his property unclouded in title may be hindered, then such notice could as well be given two years prior and serious evil be done by private act alone, and which may never be known to the court by reason of the application never in fact being made.

But, if I am wrong as to my conclusion as to how the first question is to be answered, I have little doubt as to the answer to the second. It seems clear that on October 9, 1905, when notice was first served, the title to these parcels of land was not in the Western Pocahontas Coal & Lumber Company. It had been conveyed to this West Virginia corporation on January 29, 1903, and on that day it had conveyed the legal title by mortgage to Maben and Bell as trustees. Catlett was subsequently substituted as trustee, in proper legal proceedings, in this mortgage in place of Bell, who died. In March, 1905, after default made, suit in equity was instituted in the circuit court of Raleigh county to foreclose this mortgage, to which, it must be presumed, that all persons interested in this title were made parties, for on July 21, 1905, a decree was entered in this cause directing a sale of these lands. After the entry of this decree and before the 9th day of October, 1905, James Knox Cain bought out all the right and interest in said decree and lands of the West Virginia corporation. The plaintiff admits this substantially, and also that it had notice of the ownership of such interest by Cain prior to said October 9, 1905, for it is to be remembered that on that day it lodged in the clerk's office of Raleigh county, the petition or application which it subsequently on December 11, 1905,

presented to the court, and in this petition, touching these three parcels in controversy, are the following allegations:

"Your petitioner represents that the legal title to the three strips, pieces, or parcels of lands mentioned above and described and which are sought to be taken by this proceeding is vested in the Western Pocahontas Coal & Lumber Company, a corporation of the state of West Virginia; but petitioner avers that the said lands are subject to a mortgage executed by the said Western Pocahontas Coal & Lumber Company in favor of J. C. Maben and Richard P. Bell, trustees; that since the execution of the said mortgage the said Richard P. Bell has departed this life, and is succeeded, as trustee and as beneficiary in the said mortgage, by Charles Catlett. The said Charles Catlett and J. C. Maben, trustees, are interested in said lands as the holders of the mortgage aforesaid. Petitioner avers that both the said Charles Catlett and J. C. Maben, trustees as aforesaid, are nonresidents of the state of West Virginia. And petitioner is advised and alleges that the said lands have been sold to James Knox Cain, a resident of Pennsylvania, but not yet conveyed to him."

Under these circumstances, even if this suit be held to have commenced on October 9, 1905, two reasons exist why I must hold that even at that date the title to these lands was not vested in the Western Pocahontas Coal & Lumber Company in such way as to make the Western Pocahontas corporation (the Virginia corporation) a pendente lite purchaser or assignee, and for that reason destroy its right in company with Maben and Catlett, trustees, and James Knox Cain, to remove this cause to this court. First. Because it is to be assumed that by the terms of the mortgage the legal title of the lands vested itself in Maben and Catlett, trustees, and only the equity of redemption remained in the Pocahontas Coal & Lumber Company, and, this equity of redemption having been sold to Cain, nothing but a naked release or quitclaim deed from it was required. It had no real interest, and, at most, could at that time be considered only a nominal if necessary party. Second. The facts, however, disclose that prior to the institution of this suit on October 9, 1905, if it be held to have been instituted on that day, a court of competent jurisdiction had convened the parties interested in these lands, including this West Virginia corporation, and brought the title thereto, both legal and equitable in custodio legis, and on July 21, 1905, had vested by its decree this title, legal and equitable, substantially in its special commissioner with power to sell and convey subject only to the power of confirmation reserved by the court. Therefore it might well be held that this condemnation proceeding was a pendente lite one to this prior instituted chancery one, to be held in abeyance to wait the result reached in it as to the disposition of the title so in its custody, or to be filed by its permission, making its special commissioner party, or at least to be heard in connection therewith, so that damages awarded should be under its control. The sale having been made under this chancery decree on October 16, 1905, only seven days after the lodging of plaintiff's petition herein, whereby the legal and equitable title became vested in the Virginia corporation, relieved the plaintiff from the necessity of such proceedings, but because this is so it seems clear to me that this does not also allow the plaintiff or petitioner herein to claim that such purchaser is only a purchaser, assignee, or transferee pendente lite in this suit, and therefore not entitled to remove this cause to this court.

Since the foregoing was written and in view of the conclusions therein reached by me, another question has arisen which I must determine. As I have heretofore in substance set forth, under the express permission provided by section 4, c. 42, Code W. Va. (Code 1906, § 1364), the original petition in condemnation was filed not only against the parties interested in the three parcels of land of 23.47, 2.59, and 2.8 acres, respectively, which I have considered, but also against a number of resident defendants seeking to take from them wholly distinct and different parcels owned by them in which the nonresident Western Pocahontas corporation, and the nonresident individuals, Cain, Maben, and Catlett, have no interest of any kind or character. It is suggested by counsel for these nonresidents that under the second clause of the second section of the removal act of 1875 (Act March 3, 1875, c. 137, 18 Stat. 470 [U. S. Comp. St. 1901, p. 509]), as construed in Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514, all these controversies between this resident railroad corporation and these resident landowners have been removed and must be settled and determined in this court. I do not regard this position as tenable.

As suggested by counsel for the railroad, it seems to me, a clear distinction is to be drawn here between "separable controversies," as contemplated by the statute, and separate and wholly distinct controversies, only joined in one proceeding by express statutory permission. In Barney v. Latham I think this distinction is indicated when, on page 214 of 103 U. S. (26 L. Ed. 514), it is said:

"It may be suggested that if the complaint has united causes of action, which, under the settled rules of pleading, need not, or should not, have been united in one suit, the removal ought not to carry into the federal court any controversy except that which is wholly between citizens of different states, leaving for the determination of the state court the controversy between the plaintiffs and the land company. We have endeavored to show that the land company was not an indispensable party to the controversy between the plaintiffs and the defendants, citizens of New York, Wisconsin, and Massachusetts. Whether these defendants and the land company were not proper parties to the suit we do not now decide. We are not advised that any such question was passed upon by the court below. It was not discussed here, and we are not disposed to conclude its determination by the court of original jurisdiction, when it is therein presented in proper form. A defendant may be a proper, but not an indispensable, party to the relief asked. In a variety of cases it is in the discretion of the plaintiff as to whom he will join as defendants. Consistently with established rules of pleading he may be governed often by considerations of mere convenience; and it may be that there was, or is, such a connection between the various transactions set out in the complaint as to make all the defendants proper parties to the suit, and to every controversy embraced by it, at least, in such a sense as to protect the complaint against a demurrer upon the ground of multifariousness or misjoinder."

It cannot be denied that under the "established rules" of common-law pleading, unaided by statutory permission, a demurrer for multifariousness and misjoinder would have to be sustained instantly to a declaration of debt demanding payment of different and distinct debts from different defendants joined, and the case would not be different in condemnation proceedings if the express statutory provision was wanting. This statutory provision is merely permissive, and, if the joinder is made, it is only to the extent of allowing speed, convenience, and economy to be exercised thereby. While it will allow this, as counsel has

well said, it jealously guards the rights of the parties by virtually providing for the complete separation of the different actions from the beginning.

Single notices to the defendants, describing to each alone the land in which he is interested, may be given: A.'s land may be held liable to be taken, B.'s not. One set of commissioners may be appointed to view A.'s land, a different set that of B.'s. Separate awards and reports are required for each man's tract. The report upon one may be confirmed, on another set aside. A. may agree to accept the compensation ascertained, while B. may not. Separate jury trials may be had as to different parcels and with different owners. Under these conditions I do not consider the cases of Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514, Hyde v. Ruble, 104 U. S. 407, 26 L. Ed. 823, Brooks v. Clark, 119 U. S. 502, 7 Sup. Ct. 301, 30 L. Ed. 482, and others cited, as applicable to this summary statutory proceeding, but, on the contrary, I do regard the Pacific Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319, and In re Stutsman County (C. C.) 88 Fed. 337, as determining the true principle that must govern in a proceeding like this.

The motion to remand must therefore be overruled and jurisdiction maintained in this court as to the controversy relating to the condemnation of the three parcels of 23.47, 2.59, and 2.8 acres in which the nonresident Western Pocahontas corporation is interested, but not otherwise.